*In re* MARRIAGE OF MARIE R. COURTRIGHT, Petitioner-Appellant and Cross-Appellee, and JOHN B. COURTRIGHT, Respondent-Appellee and Cross-Appellant.

Third District   No. 3—88—0481

Opinion filed June 21, 1989.

Leonard F. Sacks, of Sacks, Albrecht & Copeland, of Kankakee, for appellant.

Gill M. Garman and Randall Ray, both of Sebat, Swanson, Banks, Garman & Townsley, of Danville, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The trial court entered a judgment for the dissolution of the parties' marriage, which included a two-year, reviewable maintenance award of $1,100 per month to the petitioner, Marie R. Courtright. Marie appealed, arguing that permanent maintenance should have been awarded. On appeal, this court affirmed the.maintenance award granted by the trial court. *In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, 507 N.E.2d 891.

At the end of the two-year period, the trial court reviewed Marie's circumstances and found that she had failed to put forth a good-faith effort to become self-sufficient. The court nonetheless extended the maintenance award for two additional years, but reduced the amount she was to receive to $600 per month for the first year and $350 per month for the second year. Maintenance was then to automatically terminate after the second year. Marie appeals the reduction in the amount and duration of the award. The respondent, John B. Courtright, cross-appeals, arguing that the maintenance award should not have been continued for an additional two years.

The record shows that the parties were married for 29 years. At the time of the review hearing, Marie was 55 years old and had an education degree from Northwestern University. She was not, however, licensed to teach and prior to the dissolution of the marriage had not worked outside the home for 28 years. She was generally in good health, although she had some residual disability in her left foot as the result of childhood polio and had some discomfort in her right foot from an arthritic condition. As a result, she was unable to work at jobs that required her to be on her feet for any length of time.

John, a licensed physician, worked in a three-man clinic as a general practitioner. His gross income for the four years prior to the dissolution ranged between $83,000 and $100,000. In 1986, his income was $101,565 and in 1987, $101,300.

As part of the property settlement, Marie received, among other items, the marital home valued at $135,000 and a 200-acre farm val-

ued at $360,000. The net value of all of the property she received was $484,766. John received $234,100 in assets.

After the divorce, Marie worked at several jobs. In the beginning of 1986, she worked at a gift shop in a Colorado resort for several months. She then returned to Illinois in the summer of 1986 and worked at a Holiday Inn as a front-desk clerk. Marie testified that she was fired from that position after two months because her age and her appearance did not fit the company image. Thereafter, she applied at several other places, including St. Joseph's Catholic School in Kentland, Indiana. She was subsequently recruited by IDS American Express, where she underwent a six-month training program and passed the test to become a financial planner. She was to receive a salary of $24,000 her first year. Thereafter, compensation would be solely on a commission basis. However, Marie testified that she left American Express in October of 1987, because she realized that given the office expenses she would have to pay out of her commission, she could not support herself on the remainder. She then started working at Dean Witter in a support staff position, earning $12,000 per year. Marie testified that she was fired from that position in March of 1988, because she sounded confused on the telephone and missed too many days from work due to court appearances.

The trial court found that Marie had failed to make a good-faith effort to become self-sufficient. In support of its determination, the court focused on two factors. First, it found that Marie had failed to obtain her teaching certificate, which would have enabled her to utilize her degree. Second, it found that she had not sold the marital home. The court noted that although Marie had the right to gamble with the real estate market in order to obtain the highest price possible, it would not permit that risk to be indefinitely passed along to John. The court stated that selling the house would significantly reduce Marie's expenses and would convert an essentially wasted asset into an income-producing asset. Based upon its findings, the court entered its order modifying the amount and duration of Marie's maintenance award.

Marie argues on appeal that the above findings of the trial court were against the manifest weight of the evidence and that the court abused its discretion in reducing the amount and duration of the maintenance award. John cross-appeals, arguing that because Marie failed to put forth a good-faith effort to become self-sufficient, maintenance should be terminated.

■■■ A trial court's award of maintenance will not be overturned unless the court's findings and conclusions were against the manifest

weight of the evidence, thus showing an abuse of discretion. (*In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 450 N.E.2d 1229.) Section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 504(b)) provides that in determining the amount and duration of maintenance awards, the court must consider, among other factors, the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment. The Act creates an affirmative obligation on the part of the maintenance payee to seek the appropriate training and skills to become financially independent. (*Mittra*, 114 Ill. App. 3d at 634, 450 N.E.2d at 1233.) Failure of the payee to make good-faith efforts to achieve this goal may be a basis for a reduction or termination of maintenance. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748.) However, the trial court should bear in mind that financial independence does not mean the ability to merely meet one's minimum requirements, but entails the ability to earn an income which will provide a standard of living similar to that enjoyed during the marriage. See *In re Marriage of Carney* (1984), 122 Ill. App. 3d 705, 462 N.E.2d 596; *In re Marriage of Ingrassia* (1986), 140 Ill. App. 3d 826, 489 N.E.2d 386.

In the instant case, the trial court found that because Marie had failed to obtain her teaching certificate, she had not invested the required effort to become self-sufficient. We do not agree. At the time of the review hearing, Marie was 55 years old. Prior to her divorce, she had not worked outside of the home for 28 years. She suffered some residual disability in both of her legs, rendering her unable to stand on her feet for any length of time. Though she did have a teaching degree, Marie testified that she did not feel emotionally stable enough to deal with school-aged children. Nonetheless, she still attempted to obtain a teaching position at a school in Indiana. Further, she worked as a clerk in a Colorado gift shop and then upon returning to Illinois worked as a desk clerk at a hotel. Although she was terminated from that position, Marie went on to work for IDS American Express and Dean Witter.

We find that Marie has put forth substantial effort to find suitable employment. Her lack of success thus far is understandable for one who has been absent from the work world for so long. There is nothing in the record indicating that Marie did not actively seek employment or that she refused to work at any time within the two years she was receiving maintenance. While she did not obtain her teaching certificate, this merely evidenced a conscious decision on her part not to teach.

The trial court further found that Marie's failure to sell the marital home and receive some income from the property indicated a lack of good faith. The record shows that a few months after the divorce, Marie listed the house for sale. The house was originally listed at $155,000, although the trial court had valued the house at $135,000. Marie testified that she was willing to settle for the trial court's valuation. The highest offer, however, was $120,000, which Marie rejected. The trial court also noted that the farm property Marie received from the property settlement could be a source of income for her.

■■ We note that a maintenance payee is not required to sell her assets or impair her capital in order to generate income from which she can support herself. (*In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925.) In the instant case, we are unable to find that Marie's failure to sell the home constituted a lack of good faith. Marie has had the house on the market since the time of the divorce, and although she has received a number of offers, the highest offer thus far was well below the court-determined value of the home. We cannot say that merely because Marie is attempting to realize the highest realistic price possible for her home she is not acting in good faith. Likewise, Marie is not required to sell the farm, though we note that she has expressed a willingness to do so if necessary to support herself.

■■ We conclude that so far Marie has made a good-faith effort to become self-sufficient and that the trial court's determination to the contrary was against the manifest weight of the evidence. The trial court abused its discretion when it in essence punished Marie for her lack of success despite her efforts. It is not realistic or fair to expect a recent divorcee who has worked solely as a homemaker for 28 years to quickly and smoothly transform herself into a financially independent member of society, with a standard of living approaching the standard she enjoyed during the marriage. That does not mean that if another two years pass and she still has not found permanent employment or sold her property John must continue supporting her indefinitely. At this time, however, because we find that Marie has made a good-faith effort to become self-sufficient, we vacate the trial court's order reducing Marie's maintenance award and reinstate its prior maintenance award of $1,100 per month for two years, reviewable at that time. (See *In re Marriage of Carney* (1984), 122 Ill. App. 3d 705, 462 N.E.2d 596.) Our decision renders moot John's cross-appeal.

The judgment of the circuit court of Iroquois County reducing maintenance is vacated. The court's prior award of maintenance is re-

instated. The cause is remanded, with the court ordered to retain jurisdiction over the cause so that it may review the propriety of continued maintenance at the end of two years and periodically thereafter if necessary.

Vacated and remanded.

BARRY and SCOTT, JJ., concur.