*In re* MARRIAGE OF JAMES McGORY, Petitioner-Appellee, and SANDRA McGORY, Respondent-Appellant.

Third District   No. 3—88—0570

Opinion filed July 6, 1989.

Winstein, Kavensky, Wallace & Doughty, of Rock Island (Franklin S. Wallace, of counsel), for appellant.

Lytton, Lytton & Sutton, of East Moline (Dean L. Sutton, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

The marriage of James McGory and Sandra McGory was dissolved by judgment of dissolution of marriage on March 23, 1983. At that time, the parties had two children, namely Suzanne, born October 5, 1969, and Samantha, born November 24, 1970. The judgment awarded custody of the children to Sandra and required James to pay as unallocated support one-half of his unemployment compensation.

At the date of dissolution, James' employment had been recently terminated but was roughly $40,000 per year prior thereto. Sandra was also awarded, among other things, one-half of James's severance pay of $3,540 and $10,400 as the net proceeds from the sale of the marital residence. James was further required to notify Sandra's attorney upon becoming reemployed.

In August of 1983, Sandra petitioned the court for additional support on the ground that James had returned to employment. After a hearing on October 20, 1983, the court entered an order, dated December 12, 1983, requiring unallocated support payment of $428 on the first and third Friday of each month based on James' net semi-monthly income of $1,070 so long as Sandra is enrolled as a full-time student in college level courses with a review of the award to be had in four years. A further order entered January 11, 1984, required Sandra to "report any change in her educational status or employment status to *** [James]."

On October 28, 1987, James petitioned for modification alleging that the four-year period previously set by the court has expired. Sandra responded by denying the allegations and asked for increased support and attorney fees. Following discovery procedures, James amended his petition seeking termination of maintenance alleging that Sandra had not been a full-time student and she was able to take care of herself through assets accumulated as a result of the unallocated support payments.

At a hearing held on the petitions on July 27, 1988, the parties stipulated that Sandra was requesting an increase in support and maintenance. Sandra testified that since 1983, she and her two daughters had been living in Florida with Sandra's father. Recently, however, she and Samantha moved to her home State of Michigan for Sandra to obtain employment. Suzanne stayed in Florida with Sandra's father to attend her second year of college. Sandra stated that, as a result of moving to Michigan, her monthly cost of living increased from roughly $850 to $2,115 per month. Sandra attended a community college in Florida beginning in 1983. Her school records reveal she was last a full-time student during the spring term of 1984. She did enroll for additional classes in later years, particularly college algebra, but withdrew for credit purposes although she stated that she continued to attend the classes. Nonetheless, even if Sandra did attend the classes she withdrew from, she failed to enroll in enough classes from the fall of 1985 semester on to obtain full-time status.

Sandra further testified that since 1983, she has not worked except for a brief unsuccessful business venture in 1987 in which she

earned $2,200. Otherwise, substantially all of Sandra's income came from the unallocated support payments. Sandra states that she has regularly attempted to find suitable employment, but could identify only eight individual businesses that she applied to during the five-year period she was in Florida. She indicated her move to Michigan would benefit her employment search, as she had more contacts in Michigan.

On the other hand, James remarried, obtained new employment, and the trial court found he is now earning a net income of roughly $1,410.12 semimonthly. He also has approximately $110,000 in assets. It is clear that James is now earning more money than he was in 1983 and is in a substantially better financial position than is Sandra.

By order dated August 4, 1988, the trial court terminated the unallocated support payments to be made by James and effectively barred further maintenance. The trial court also found Suzanne to be "of age" and disallowed support for her. As to Samantha, however, the court found the minimum support guidelines to be inadequate considering the relative financial position of the parties and the standard of living Samantha would have enjoyed but for the dissolution, and thus, awarded Sandra $325 bimonthly as support for Samantha. Attorney fees were ordered to be the responsibility of each respective party.

■ The first issue is whether the trial court abused its discretion in terminating maintenance payments. Sandra argues that the standard of living established during the marriage as well as the great disparity of earnings subsequent to the marriage warrant an award of maintenance to her. In disallowing maintenance pursuant to section 504 of the Illinois Marriage and Dissolution of Marriage Act (the Act), however, the trial court took into account, among other things, the length of time since the marriage was dissolved, Sandra's failure to notify James upon getting her degree and her lack of *bona fide* effort to find suitable employment. (Ill. Rev. Stat. 1987, ch. 40, par. 504.) In this case, Sandra received unallocated support for four years as well as receiving $5,200 at the time of dissolution as a lump sum maintenance award. She was given the opportunity to obtain a college diploma and become self-sufficient. During this period, however, Sandra ceased being a full-time student, thereby causing her own delay in obtaining a diploma. Moreover, the record is void of any *bona fide* attempt by Sandra to obtain self-sufficiency absent being a full-time student. Although a few resumes were sent and a business started, since spring of 1985 Sandra appears to have, for the most part, attended college part time without being employed outside of the home. "The

Illinois Marriage and Dissolution of Marriage Act creates an affirmative obligation on the part of the spouse requesting maintenance to seek and accept appropriate employment." *In re Marriage of Callaway* (1986), 150 Ill. App. 3d 712, 716, 502 N.E. 2d 366.

■ Sandra's failure to notify James, when she ceased being a full-time student, is not the primary reason for our affirmance of the trial court. The main reason is Sandra's less than diligent attempt to earn a degree that properly should have taken two years, and her further failure, in the meantime, to diligently seek employment. In *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 634, 450 N.E. 2d 1229, 1234, the court held that the party receiving maintenance is required to get the training and skills necessary to become financially independent and failure to do so within a reasonable time frame may form the basis for a petition to modify maintenance payments. If the record revealed that Sandra was seeking a four-year degree, or that she had been diligent in looking for employment, the results here may have differed. As it stands, however, the trial court's decision is not an abuse of discretion nor is it against the manifest weight of the evidence. See *In re Marriage of Wilder* (1984), 122 Ill. App. 3d 338, 461 N.E. 2d 447.

■ The second issue is whether the trial court abused its discretion in denying education support for Suzanne. Sections 510 and 513 of the Act (Ill. Rev. Stat. 1987, ch. 40, pars. 510, 513) allow for the payment of educational support for a child, whether of minor or majority age, as equity may require. The trial court based its denial without prejudice for such support on the grounds that evidence was not presented regarding the relevant factors to be considered under the provisions of section 513 of the Act.

■ Indeed, the record is void of evidence concerning the amounts Sandra has been required to expend for Suzanne's education. It appears as though Suzanne is not dependent upon Sandra for educational support, but has in fact become fully emancipated. Suzanne has employment, established credit and lives with her maternal grandfather. On cross-examination Sandra stated that Suzanne receives roughly $1,300 per semester in educational grants and there is no evidence to indicate this amount is inadequate to pay for Suzanne's education or that she is dependent on her parents to provide further assistance.

Sandra cites *In re Marriage of Pauley* (1982), 104 Ill. App. 3d 100, 432 N.E. 2d 661, for the proposition that Sandra is entitled to reasonable living expenses of Suzanne beyond those expenses for tuition and fees. In *Pauley*, the court determined that the custodial wife

was entitled to reasonable living expenses for two non-minor sons, one of whom was living at home and the other on campus. While the court discussed the factors to be considered under section 513 of the Act, we can only presume that satisfactory evidence was taken regarding these factors for a judge to make a knowledgeable decision on the matter. In the present case, no information other than that elicited by James' counsel was presented regarding Suzanne's financial resources and her financial dependency on Sandra. The little information received on cross-examination does not support Sandra's request that James contribute to Suzanne's education and maintenance. On a petition to modify under section 510(a), the burden is on the moving party to present to the court sufficient evidence upon which a decision can be made. Sandra has failed to meet her burden on this occasion but has the opportunity to be heard again since her petition was denied without prejudice.

The final issue for review is whether the trial court abused its discretion in denying Sandra's request for James to pay her attorney fees. The parties stipulated that Sandra's attorney fees of $1,000 were reasonable without agreeing which party should pay them. The trial court ordered each party to pay their own attorney fees and costs.

■■ ■ Section 508 of the Act authorizes the court to order either spouse to pay the attorney fees and costs of the other thereby enabling a spouse lacking sufficient financial resources to obtain legal representation in certain situations. (Ill. Rev. Stat. 1987, ch. 40, par. 508.) Subsections (a)(1) and (a)(2) of section 508 extend the court's discretion to matters involving the defense of a proceeding under this Act and the modification of any order under this Act. (Ill. Rev. Stat. 1987, ch. 40, pars. 508(a)(1), (a)(2).) No provision is made, however, for an award of attorney fees to the spouse initiating an appeal. Since Sandra initiated this appeal, the only fees in question are those incurred at the trial level. Aside from the proceeding being one of a type outlined in subsections (a)(1) through (a)(5) and (b), the only statutory consideration to be made is the financial resources of the parties. Courts generally interpret section 508 to mean that the party seeking the relief must show financial inability to pay with the corresponding ability of the other party to pay. (*In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 448 N.E. 2d 1030; *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E. 2d 947.) Financial inability exists where payment would undermine economic instability of the spouse incurring the debt. *Donahoe* 114 Ill. App. 3d 470, 448 N.E. 2d 1030; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E. 2d 576.

In this case, the evidence is convincingly clear that James has the ability to pay Sandra's attorney fee of $1,000. The real question is whether Sandra has shown an inability to pay. She stated that payment of the attorney fee would come from a $3,000 savings account. At present, she has no job and her maintenance has just been terminated. Furthermore, she did not initiate these proceedings and should not be handcuffed in representing her interests by the inability to pay her attorney. Moreover, it appears that Sandra's move to Michigan will require her to use part or all her savings account to provide for her living expenses. On the contrary, however, requiring James to pay the fee would cause no undue hardship to him. Further considering the great disparity in financial positions, we believe the trial court abused its discretion in denying Sandra's request for James to pay her attorney fee of $1,000.

Accordingly, we affirm the trial court's decision regarding the termination of maintenance to Sandra and the denial of educational support for Suzanne, but reverse the trial court's decision regarding attorney fees and remand the cause, directing the trial court to order James to pay $1,000 for Sandra's attorney fees.

Affirmed in part, reversed in part.

WOMBACHER, P.J., and STOUDER, J., concur.