*In re* MARRIAGE OF MARIE R. COURTRIGHT, Petitioner-Appellant, and JOHN B. COURTRIGHT, Respondent-Appellee.

Third District   No. 3—91—0653

Opinion filed June 22, 1992.

Sacks & Albrecht, of Kankakee (Leonard F. Sacks, of counsel), for appellant.

Sebat, Swanson, Banks, Garman & Townsley, of Danville (Gill M. Garman, of counsel), for appellee.

JUSTICE SLATER delivered the opinion of the court:

The 29-year marriage of the parties was terminated in 1986 by a judgment of dissolution which was appealed to this court. (*In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, 507 N.E.2d 891 (*Courtright I*).) In *Courtright I,* we approved the trial court's award of rehabilitative maintenance reviewable at the end of two years. At the end of the two-year period the trial court reviewed the maintenance, found that petitioner (Marie) had failed to put forth a good-faith effort to become self-sufficient, but nonetheless then extended maintenance for two additional years at reduced amounts. On appeal to this court, we ruled that the trial judge erred in his finding of a lack of good-faith effort at rehabilitation and reinstated the prior rehabilitative maintenance award of $1,100 per month for two additional years, reviewable after that time. *In re Marriage of Courtright* (1989), 185 Ill. App. 3d 74, 540 N.E.2d 1027 (*Courtright II*).

In 1990 Marie petitioned the trial court to review the question, again, of continued maintenance. After a full hearing the trial court found that she "has failed to continue the efforts at rehabilitation which the [a]ppellate [c]ourt found sufficient in the first two year period; that [petitioner] has, in effect, discontinued efforts to enter the job market in any significant way; and that [petitioner] continues to refuse to avail herself of the higher income that the farm cash lease would produce. Consequently the [c]ourt is compelled to find that rehabilitative maintenance should cease." Marie argues in this appeal that the order terminating rehabilitative maintenance is against the manifest weight of the evidence and an abuse of discretion by the trial judge. We disagree.

■ As we stated in *Courtright II*, our conclusion that Marie had made a good-faith effort to become self-sufficient "does not mean that if another two years pass and she still has not found permanent employment or sold her property John must continue supporting her indefinitely." (*Courtright II*, 185 Ill. App. 3d at 78, 540 N.E.2d at 1030.) It is clear there is an affirmative obligation on a former spouse receiving rehabilitative maintenance to find appropriate employment. (*In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 450 N.E.2d 1229; *In re Marriage of Callaway* (1986), 150 Ill. App. 3d 712, 502 N.E.2d 366.) When one seeks to extend an award of rehabilitative maintenance, the burden lies on the party seeking the extension to show he or she has met the affirmative duty of acquiring sufficient training or education to find employment. *In re Marriage of Robinson* (1989), 184 Ill. App. 3d 235, 539 N.E.2d 1365.

If one fails to make a good-faith effort to become self-sufficient, a court may terminate rehabilitative maintenance. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748; *In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 465 N.E.2d 649.) The amount of support established and the period of time for support should be such as to give the recipient an incentive to become gainfully employed and to maximize other assets. (*In re Marriage of Scafuri* (1990), 203 Ill. App. 3d 385, 561 N.E.2d 402.) Rehabilitative maintenance requires a continuing effort by the petitioner to become self-sufficient.

In the summer of 1988 Marie, who held an education degree, renewed her teaching certificate and signed up to be a substitute teacher in Iroquois County. Substitute teachers in Iroquois County earn approximately $42 per day. She earned $2,050 as a substitute in the 1988-89 school year and $1,700 for 1989-90. Petitioner did not apply for any full-time teaching positions in the area and testified that she did not intend to seek additional employment beyond the substitute teaching which she had done the past two years.

In May of 1989 petitioner did sell the former marital residence which had been awarded to her as part of the marital property distribution under which she had received 67% of the $718,000 net marital estate. The residence, valued at $135,000 in 1986, was ultimately sold for only $110,000. For all practical purposes petitioner did not reside in the residence for approximately three years prior to its sale. After paying attendant sale expenses and outstanding mortgages, the sale netted $55,700. In addition, 40 acres of farmland were sold at the same time for $1,750 per acre, which resulted in after tax net proceeds of $60,000. The proceeds from these sales, approximately $115,000,

were invested by petitioner in stocks, bonds and mutual funds which were earning approximately 8% per year.

For calendar years 1988 and 1989 Marie had averaged $8,532 cash income from the farmland. A fair cash rental for the farm land owned by petitioner was established to be $120 per acre, less real estate taxes, which would net a minimum of $100 per acre, or $16,000 per year. Petitioner, however, had chosen to lease the farm on a crop-share basis, which resulted in diminished returns of approximately 50% from $16,000 to $8,532. This was due, in part, to a drought which had taken place in 1988. A certified public accountant testified that if petitioner were to sell the remaining farmland at the then current prices, she could net, after sale expenses and income taxes, approximately $211,000. Conservatively invested those proceeds should earn approximately $16,000 per year.

Petitioner's total income, without maintenance, according to her testimony, was approximately $20,000 per year. Since the termination of the marriage she has worked briefly in Colorado as a telephone operator and gift store manager, at the Holiday Inn in Kankakee as a desk clerk and as a financial planner for I.D.S. American Express and Dean Witter. All these activities were undertaken before *Courtright II* was decided. Since *Courtright II* her only attempts at employment have been substitute teaching. Marie testified that she had not applied for any permanent teaching positions after she became recertified. She had made no further efforts in the financial planning field to obtain employment since she had been laid off from Dean Witter in March of 1988.

In the case of *In re Marriage of McGory* (1989), 185 Ill. App. 3d 517, 541 N.E.2d 801, this court affirmed the termination of maintenance. In so doing we noted that the former wife had been given the opportunity to obtain a college diploma and become self-sufficient. Her less than diligent attempt to earn a degree and failure to diligently seek employment were held to be proper reasons for the trial court to have terminated her maintenance.

*In re Marriage of Fazioli* (1990), 202 Ill. App. 3d 245, 559 N.E.2d 835, recognized the affirmative duty of a former spouse seeking to increase unallocated child support and maintenance to become financially independent. There the former wife, who had a teaching degree, had allowed her teaching certificate to expire. She was operating an art gallery at a substantial loss. The court stated that her decision to operate the art gallery rather than to teach should not be the basis for increasing the financial burden on the former husband.

Part of Marie's financial difficulties are self-imposed, to wit, her choice to crop-share the farm and not to return full time to teaching. It is clear that a former wife cannot use self-created financial difficulties as a basis for claiming maintenance when she has the ability to earn more income. (*In re Marriage of Seymour* (1990), 206 Ill. App. 3d 506, 565 N.E.2d 269.) An award of permanent maintenance was inappropriate where a wife failed to maximize the return from a farm that she owned and failed to seek appropriate employment. *In re Support of McGrew* (1980), 90 Ill. App. 3d 27, 412 N.E.2d 996.

Petitioner argues that the trial court abused its discretion in the denial of her request for continuing maintenance. An abuse of discretion is said to have occurred only where no reasonable person would take the view adopted by the trial court. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) To find an abuse of discretion this court must be able to say the trial court acted arbitrarily or without conscious judgment, or that its order either exceeds the bounds of reason or ignores recognized principles of law so that substantial injustice occurs. (*In re Marriage of Krupp* (1990), 207 Ill. App. 3d 779, 566 N.E.2d 429.) Although reasonable persons might differ as to the propriety of the trial court's action in the instant case, it cannot be said, based on the record before us, that no reasonable person would adopt the view of the trial court.

The trial judge heard petitioner testify, he observed her demeanor and assessed her credibility. The judge heard Marie testify about her employment history and her desire to remain as a substitute teacher. The judge heard her testify to the effect that she had worked only 41 days in 1989 and that she believed that qualifying to become a substitute teacher and doing substitute work was all that was required. The trial judge found the petitioner's testimony lacking and found that she had not met the burden of proving she had made a good-faith effort to become self-sufficient. His decision on this point will not be disturbed unless it is manifestly against the weight of the evidence. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 500 N.E.2d 612.) We find that the weight of the evidence in the record supports the court's ruling denying further maintenance on the basis of petitioner's lack of good-faith effort to become self-sufficient.

The order of the circuit court terminating rehabilitative maintenance is affirmed.

Affirmed.

GORMAN and STOUDER, JJ., concur.