*In re* MARRIAGE OF WILLIAM A. LENKNER, Petitioner-Appellant, and GAIL I. LENKNER, Respondent-Appellee.

Fourth District No. 4—92—0171

Opinion filed February 11, 1993.

Robert I. Auler, of Auler Law Offices, of Urbana, for appellant.

Glenn A. Braden, of Braden Law Office, of Neoga, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

William Lenkner appeals the denial of his petition to modify an award of maintenance. (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) William alleges the circuit court abused its discretion in denying his petition due to his former spouse's alleged failure to make a good-faith effort to achieve financial independence, and due to a public policy in favor of encouraging rehabilitation of dependent former spouses. We find the trial court's denial of William's petition was well within its exercise of discretion and affirm.

Gail and William Lenkner were married on May 14, 1966. No children were born to this marriage; however, William adopted Gail's natural child, Darrell, who reached the age of majority prior to the dissolution. On April 24, 1984, William filed for dissolution of marriage. In his petition for dissolution, William alleged the parties had entered into an oral agreement regarding maintenance, property division, debts, and attorney fees. With respect to maintenance, William represented the parties had *agreed* he would pay $600 monthly to Gail. Of the $600, $459 was to be considered maintenance and $141 was to be applied to the mortgage payments on the marital home. The agree-

ment further provided for increases or decreases in maintenance based upon increases and decreases in William's salary. Gail would be permitted to continue residence in the marital home. She would be required to pay the real estate taxes and insurance. Gail filed her appearance, waived a bifurcated hearing, and agreed to the entry of the judgment of dissolution. The judgment was entered on May 15, 1984, incorporating the parties' agreement.

In January 1987, William unilaterally terminated the maintenance and mortgage payments. On June 12, 1987, Gail filed a petition for a rule to show cause and requested William be ordered to pay the arrearage in the maintenance and mortgage payments. William counterpetitioned to terminate maintenance, alleging there had been a material change in circumstances in that Gail had become employed, and alleging Gail had had sufficient time to rehabilitate herself (Ill. Rev. Stat. 1987, ch. 40, par. 510). William additionally requested the marital home be sold and the proceeds divided. The circuit court characterized the Lenkners' marriage as one involving a modest standard of living on the middle-income salary of William while Gail basically stayed at home. At the time of dissolution William agreed to pay Gail maintenance which varied according to his income, consented to her use of the family residence, and agreed to pay the mortgage. The court found that even though Gail was now employed, she was in need of additional support in order to maintain or reestablish a standard of living similar to that enjoyed at the time of the dissolution and William's ability to pay maintenance had increased. The court ordered William to pay the arrearage and *increased* future maintenance payments to $572 per month, commensurate with William's increase in salary. The court denied William's petition in most respects, but determined the maintenance would no longer be variable according to increases or decreases in William's salary.

On August 5, 1991, William filed another petition for modification of maintenance. (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) William alleged that Gail, as the recipient of an award of permanent maintenance, is under an affirmative obligation to seek appropriate training and skills to become financially independent. William further alleged Gail failed to make good-faith efforts toward the goal of financial independence during the seven years she has been receiving maintenance.

William and Gail were married for 18 years. During the marriage, William attended college and received a degree in electrical engineering. Gail worked as a bookkeeper and dispatcher on occasions during the marriage, but was not employed at the time of the dissolution.

William is seven years younger than Gail. At the time of the dissolution, Gail was 48. She is now 56 years old. At the modification hearing, William testified he is a minimum of 10 years from retirement, earns between $55,000 and $60,000 per year, and is not economically burdened by making the maintenance payments. William seeks termination of his maintenance obligation because he feels it is time for Gail to be self-sufficient. She testified that since the dissolution she has taken a typing course as well as a computer course. Gail has worked at a series of full- or part-time jobs, holding down two jobs on at least one occasion. She is currently employed full-time and has a weekly net income of $163. Two witnesses testified on behalf of Gail regarding her attempts to seek employment, and the difficulties which a 56-year-old woman faces in the job market.

The circuit court denied the petition to terminate maintenance, finding Gail had made an effort, though not entirely successful, to find employment of a more economically rewarding nature. The court noted the real estate provisions of the dissolution order geographically limited Gail's employment search to the east central Illinois area. Although the court endorsed the Illinois public policy in favor of encouraging the dependent spouse to become self-sufficient, it rejected William's argument his maintenance obligation should be terminated on this basis, finding Gail has continued in self-motivated efforts of rehabilitation. This appeal followed.

The awarding and modification of maintenance rests within the sound discretion of the trial court, and we will not disturb its judgment absent an abuse of discretion. (*In re Marriage of Carpel* (1992), 232 Ill. App. 3d 806, 828, 597 N.E.2d 847, 829.) The circuit court carefully considered William's arguments and rejected them as the facts indicated it would be inappropriate to terminate maintenance under existing law.

■■ We reject William's contention he is not required to demonstrate a change in circumstances in order to succeed in his petition to modify maintenance. Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 510(a)) specifically states a maintenance award may only be modified upon a showing of a substantial change in circumstances. This provision is applicable when the modification sought is actually termination of the maintenance obligation. (*In re Marriage of Whiting* (1989), 179 Ill. App. 3d 187, 192, 534 N.E.2d 468, 471.) William alleges case law establishes the proposition that the payor spouse is relieved of demonstrating changed circumstances where he alleges the recipient spouse has failed to make a good-faith effort to achieve financial indepen-

dence. This is incorrect. The payor spouse is not relieved of demonstrating changed circumstances; rather, the lack of good-faith effort to achieve financial independence may, if proved, constitute the changed circumstances necessary for modification. This distinction is important due to the burden of proof. The burden of establishing changed circumstances is on the party seeking relief. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 287, 469 N.E.2d 167, 176; *In re Marriage of Garelick* (1988), 168 Ill. App. 3d 321, 326, 522 N.E.2d 738, 742.) Thus, where the payor spouse alleges the dependent former spouse has failed to meet the affirmative obligation to make a good-faith effort to achieve financial independence, the payor spouse bears the burden of proving the lack of good-faith effort. We therefore reject William's contention he is not required to demonstrate a substantial change in circumstances, and continue our analysis to determine whether the trial court erred in finding William failed to meet this burden.

William alleges Gail failed to make a good-faith effort to become financially independent because she has not pursued education or training to enhance her earning power. William cites *In re Marriage of Mittra* (1983), 114 Ill. App. 3d 627, 450 N.E.2d 1229, in support of his contention the Act places an affirmative duty upon the dependent former spouse to seek education or training. We find *Mittra* factually distinguishable from the present case and hold that the dependent former spouse does not have an affirmative obligation, *in every case*, to seek education or training.

*Mittra* came before us not on appeal from the denial of a petition to modify, but on appeal from the initial award of indefinite maintenance. We affirmed the award of indefinite maintenance, but cautioned the dependent former spouse that she was under an affirmative obligation to make a good-faith effort to seek appropriate training and skills to become financially independent in the future. (*Mittra*, 114 Ill. App. 3d at 634-35, 450 N.E.2d at 1234.) Raj and Mindira Mittra were married for 23 years. Mindira had a master's degree from a foreign university. She had, however, never been employed in her field. At the time of the dissolution, Mindira was employed as a teacher's aide, earning $226 per month. (*Mittra*, 114 Ill. App. 3d at 629, 450 N.E.2d at 1231.) In the property settlement Mindira was awarded an expensive home and $50,000 in other assets, some of which were income producing. She was additionally awarded $1,800-per-month indefinite maintenance. *Mittra*, 114 Ill. App. 3d at 629-30, 450 N.E.2d at 1230-31.

In *Mittra*, it was appropriate to require Mindira to seek training or skills in order to enhance her earning potential. Mindira earned a monthly net income of $226 per month and received $1,800 per month in maintenance. Thus, exclusive of any income she may have received from investments, only 11% of her monthly income was attributable to her earnings. Conversely, Gail earns $163 per week, or $676 monthly and receives $572 in maintenance. Some 54% of Gail's monthly income is attributable to her earnings. Moreover, the educational background of Mindira, the petitioner in *Mittra*, made it likely that, with some education to adapt her degree to American standards, she could obtain employment earning substantially more than $226 per month.

Gail does not have the benefit of a college education or master's degree. While Gail has tried to update her skills by taking two community college courses, this has not increased her earning power. Thus, the amount of education Gail would be required to undertake in order to increase her earning power is significantly greater than in the case of the petitioner in *Mittra*. Simply put, our cautionary language in *Mittra* was a warning to the petitioner, *i.e.*, she could not remain employed in a job earning only $226 per month and expect to continue to receive $1,800 per month in maintenance, when her educational background indicated that with a minimal amount of adaptation, she could obtain more lucrative and potentially self-supporting employment.

The Act does not specifically state the dependent former spouse has an obligation to seek education or training. Rather, this duty stems from one of the factors employed by the circuit court in determining the amount and duration of the maintenance. Section 504(b) provides several factors to be considered in determining the amount and duration of a maintenance award. (Ill. Rev. Stat. 1989, ch. 40, par. 504(b).) Section 504(b)(2) provides one of these factors is the amount of time necessary for the dependent former spouse to acquire education or training necessary to procure employment. (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)(2).) Section 504(b)(2) accompanied the introduction of rehabilitative maintenance to Illinois in 1977. Inherent in the concept of rehabilitative maintenance is the optimal goal that after a period of renewing or developing skills, or reentering the job market, the dependent former spouse will be able to become self-sufficient through his or her own income. Thus, section 504(b)(2) "creates an affirmative obligation on the part of the spouse seeking maintenance to seek employment, where plausible, and this reflects one of the most important changes brought about by this Act." (Ill. Ann.

Stat., ch. 40, par. 504(b)(2), Historical and Practice Notes, at 529 (Smith-Hurd 1980).) It is noteworthy that the historical and practice notes provide the dependent former spouse's duty is to seek *employment*, where possible. The notes do not state the spouse must obtain *education or training*.

The obligation to seek education or training has not been placed on the dependent former spouse in every situation. In *In re Marriage of Callaway* (1986), 150 Ill. App. 3d 712, 716, 502 N.E.2d 366, 369, the appellate court held the dependent former spouse had an obligation to seek and accept appropriate employment. Gregory and Muriel Callaway were married for 29 years. (*Callaway*, 150 Ill. App. 3d at 713, 502 N.E.2d at 367.) Although Muriel had only an eighth-grade education and had never worked outside of the home, the court did not place an obligation upon her to obtain education or training. (*Callaway*, 150 Ill. App. 3d at 716, 502 N.E.2d at 369.) Gail has slightly more education than Muriel and has been employed outside the home. However, the situations of both women are similar in that both were married for a lengthy period of time, were primarily homemakers during the marriage, are lacking in advanced education or training, and were unemployed at the time of the dissolution of their respective marriages.

On several occasions, the appellate court has found a dependent former spouse to have complied with the affirmative obligation under the statute by seeking and accepting appropriate employment. In *In re Marriage of Martin* (1992), 223 Ill. App. 3d 855, 863, 585 N.E.2d 1158, 1164, we held the circuit court erred in denying the dependent former spouse's petition to extend maintenance. Howard and Linda Martin were married only 4½ years. (*Martin*, 223 Ill. App. 3d at 856, 588 N.E.2d at 1159.) They had lived lavishly during the marriage. Linda had foregone a right to receive maintenance from her former husband in order to marry Howard and had only been employed for less than three years of her life prior to marrying Howard. The Martin marriage was dissolved when Linda was in her late forties. Linda completed the last three weeks of a five-week real estate course and became licensed to sell real estate. However, she earned only $3,800 in a time span covering a year. (*Martin*, 223 Ill. App. 3d at 857-58, 585 N.E.2d at 1160-61.) Reversing the circuit court and rejecting Howard's arguments to the contrary, we found Linda's employment efforts to be adequate. *Martin*, 223 Ill. App. 3d at 863, 585 N.E.2d at 1164.

Similarly, in *In re Marriage of Courtright* (1989), 185 Ill. App. 3d 74, 77, 540 N.E.2d 1027, 1029, the appellate court held the dependent

former spouse had met her affirmative obligation under the Act by maintaining employment. John and Marie Courtright were married for 29 years. (*Courtright*, 185 Ill. App. 3d at 75, 540 N.E.2d at 1028.) Reversing the circuit court's determination that Marie failed to meet her obligation under the Act because she had not obtained her teaching certificate, the appellate court found Marie had been employed at a series of jobs since the dissolution and there was no evidence in the record she had ever refused employment. Marie's decision not to obtain her teaching certificate was merely a conscious decision not to teach, which did not weigh against her because she had maintained other employment. (*Courtright*, 185 Ill. App. 3d at 77, 540 N.E.2d at 1029-30.) The appellate court did not find Marie had an obligation to seek education or training, but found her efforts to find suitable employment fulfilled her obligations under the Act.

Likewise, in *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 269-70, 511 N.E.2d 156, 166, we affirmed an award of indefinite maintenance, without placing an obligation on the dependent former spouse to seek education or training. Kenley and Eloise Wade were married for over 20 years before they separated. (*Wade*, 158 Ill. App. 3d at 259, 511 N.E.2d at 159.) Eloise was 50 years old and had been absent from the work force for 15 years. Although she had a desire to return to school to obtain her nursing degree, we noted she had the funds neither to obtain this training, nor to support herself. However, we acknowledged her employability would be greatly enhanced if she were to obtain this training. Notably, we did not place a duty to obtain this training upon Eloise. Rather, we cautioned her she had an obligation to seek appropriate employment and to make a good-faith effort toward becoming financially independent. *Wade*, 158 Ill. App. 3d at 269, 511 N.E.2d at 166.

These cases indicate it is not appropriate, regardless of age, ability, inclination, former educational experience, and with no guarantee of success, to place a duty on a dependent former spouse to seek education or training. Where the circumstances of the dependent former spouse indicate such education or training is likely to successfully enable the dependent former spouse to obtain more lucrative employment, it is reasonable to place an obligation on the spouse to obtain such training or education. However, where the dependent former spouse's circumstances indicate mandatory education or training would be little more than an exercise in futility, it is appropriate to charge the dependent former spouse with the obligation to seek and accept appropriate employment.

 In the present case, due to Gail's age, lack of formal education experience, lack of guarantees of success, and the improbability she could greatly enhance her earning potential by embarking upon an educational or training program, it is inappropriate to place an obligation upon Gail to seek training or education. The appropriate obligation, as in *Courtright* and the other cases discussed in this opinion, is one of seeking and accepting appropriate employment. We find the circuit court correctly determined Gail had complied with this duty. Gail has been consistently employed since the dissolution. She has, on at least one occasion, held a full-time job as well as a part-time job, and on another occasion held two part-time jobs. William alleges Gail failed to fulfill her obligations under the Act because she quit a job at which she earned minimum wage and which was located 28 miles from her home. Had Gail quit this job and refused to seek other employment, William's argument would be more persuasive. However, the record indicates Gail immediately sought and accepted other employment, suffering no decrease in wages.

 Additionally, other factors weigh in favor of continuing Gail's maintenance. The circuit court characterized the Lenkners' marriage as one in which William earned the income while Gail fulfilled the role of a homemaker. Upon filing for dissolution, William *agreed* to pay maintenance to Gail. Significantly, the agreement made by William and Gail did not provide the maintenance was to be time limited or that it was to decrease based upon Gail's employment status. Rather, when making the agreement, the parties actually contemplated the maintenance was to *increase* when William's salary increased. The maintenance payments combined with the income Gail is able to earn provides Gail with a yearly income of $15,350, 40% of the income she enjoyed when married to William in 1984. Even with the maintenance payments, Gail's standard of living has decreased significantly due to the dissolution.

Moreover, the record does not indicate Gail was ever informed she had a duty to seek training or education in order to continue receiving this maintenance. An award of maintenance may properly be terminated where it is conditional upon the dependent former spouse's attendance at an institution of higher learning. (*In re Marriage of McGory* (1989), 185 Ill. App. 3d 517, 541 N.E.2d 801.) In *McGory*, the court in October 1983 ordered James to pay indefinite maintenance to Sandra so long as the she was enrolled as a full-time student in college-level classes, with a review scheduled after four years. In October 1987, James petitioned for termination of maintenance. The evidence indicated Sandra had not been a full-time student since 1984.

Moreover, Sandra did not work between 1983 and 1987. In 1987 she earned $2,200 in an unsuccessful business venture. The circuit court granted James' petition to terminate maintenance. (*McGory*, 185 Ill. App. 3d at 519-20, 541 N.E.2d at 802.) The appellate court affirmed, finding Sandra had not made a diligent effort to either seek a degree or employment. (*McGory*, 185 Ill. App. 3d at 521, 541 N.E.2d at 803.) The present case is unlike *McGory*. Unlike the award of maintenance to Sandra, the award of maintenance to Gail was not conditional upon Gail's pursuit of education. Moreover, while Sandra was not diligent in searching for employment, Gail has consistently sought and accepted employment since the dissolution.

William next argues that the circuit court abused its discretion in denying his petition to terminate maintenance due to a public policy in favor of encouraging financial independence of the dependent former spouse. William alleges the circuit court's denial of his petition perpetuates dependence. The record reflects the circuit court stated it endorsed the policy toward the rehabilitation of a dependent former spouse, particularly where the spouse has not undertaken efforts toward her rehabilitation or employment. However, it found the evidence did not indicate a need to limit further maintenance to encourage Gail to become self-supporting through education or enhanced efforts toward more lucrative employment because Gail had continued in self-motivated efforts of rehabilitation.

The optimal goal of rehabilitative maintenance is to provide for a severance of economic relationships between the former spouses wherever possible. However, we have recently stated that the goal of becoming financially independent is not required in all cases. (*In re Marriage of Hensley* (1991), 210 Ill. App. 3d 1043, 1050, 569 N.E.2d 1097, 1101.) In *Hensley*, the dependent former spouse was the custodian of the couple's children. She elected to work part-time rather than full-time in order to have time to be the homemaker for the children. Although the arrangement did not permit the dependent former spouse to become financially independent, we held her employment, plus acting as a homemaker for her children, was *fully equivalent* to obtaining appropriate employment and placing the children in day care. *Hensley*, 210 Ill. App. 3d at 1052, 569 N.E.2d at 1102.

Moreover, the goal of financial independence is derived from section 504(b)(2) of the Act, which states one factor to be considered in determining the amount and duration of the maintenance is the time necessary for the dependent former spouse to obtain sufficient education or training to secure employment. (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)(2).) However, this is only one factor in a list of seven. (See

Ill. Rev. Stat. 1989, ch. 40, par. 504(b).) Employment or potential employment of the spouse is only one fact to be considered in making decisions regarding maintenance. (*Carpel*, 232 Ill. App. 3d at 830, 597 N.E.2d at 864.) Another factor to be considered is the standard of living established during the marriage. (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)(3).) Marriage is a partnership, not only morally but financially. Spouses are coequals and homemaker services must be recognized as significant when the economic incidents of divorce are determined. The former homemaker should not be penalized for having performed his or her assignment under the agreed-upon division of labor within the family. It is inequitable upon dissolution to saddle the former homemaker with the burden of his or her reduced earning potential and to allow the wage-earning former spouse to continue in the advantageous position he or she reached through their joint efforts. (*Carpel*, 232 Ill. App. 3d at 829, 597 N.E.2d at 563-64.) Thus, the dependent former spouse is entitled to continue to live in some approximation to the standard of living established during the marriage unless the payor spouse's financial situation, the duration of the marriage, or other factors indicate otherwise. (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1087, 412 N.E.2d 1336, 1343-44.) The optimal goal of the maintenance act is for the dependent former spouse to become financially independent. However, under circumstances involving former spouses with grossly disparate earning potentials, this goal is often not achievable in light of the dependent former spouse's entitlement to maintain the standard of living established during the marriage. Hence, the goal of financial independence must be balanced against a realistic appraisal of the likelihood the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage. *Carpel*, 232 Ill. App. 3d at 829, 597 N.E.2d at 863.

Ronald and Susan Carpel were married for 17 years. Susan worked while Ronald finished school. After Ronald finished school, Susan worked only occasionally as a substitute teacher. During the marriage, Ronald developed a law practice. At the time of the dissolution, Ronald earned a six-figure income, and continued to earn a six-figure income after the dissolution. Susan was awarded time-limited maintenance of $750 per month for four years. At the end of the four years, Susan petitioned the court for an extension and increase of maintenance. The court denied Susan's petition because she had not found a full-time job in the four years she had been receiving maintenance. We reversed, recognizing that Ronald possessed the skills which he developed during the marriage and continued to earn a six-

figure income, while it would be unlikely for Susan to ever fully regain the career opportunities she lost during the marriage. Additionally, Ronald's expert testified a person with Susan's skills could only expect to earn $14,000 to $19,000 per year in central Illinois. We stated if the circuit court found Susan had been dilatory or directly at fault for not obtaining suitable employment, it could offset the amount she could have earned from the maintenance award; however, the circuit court erred in completely denying her petition to extend and increase maintenance. *Carpel*, 232 Ill. App. 3d at 830, 597 N.E.2d at 864.

Similarly, in *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 660-61, 409 N.E.2d 321, 328, the appellate court discussed the relationship between the goals of financial independence and maintaining the standard of living established during the marriage. James and Lilyan Simmons were married for 16 years. Lilyan did not forego educational or employment opportunities during the marriage, and at the time of the dissolution, she was employed, and her earnings coupled with her investment income provided her with a monthly net income of $1,254. (*Simmons*, 87 Ill. App. 3d at 658, 409 N.E.2d at 326.) The appellate court affirmed the award of indefinite maintenance, but reduced it from $530 to $248.50 per month due to Lilyan's overstatement of her reasonable needs and James' inability to pay a higher sum. (*Simmons*, 87 Ill. App. 3d at 661, 409 N.E.2d at 328-29.) Rejecting James' argument that the circuit court erred in awarding indefinite maintenance, the appellate court recognized that the Act, wherever possible, seeks to terminate financial entanglement of the former spouses; however, the Act was not intended to change the test for the propriety of maintenance by eliminating consideration of the standard of living established during the marriage. (*Simmons*, 87 Ill. App. 3d at 659, 409 N.E.2d at 327.) Finding Lilyan could not match the earning power of James, the court concluded, "[a] former wife unable to meet her own needs should not be expected to shift for herself without assistance from her former spouse, if he is in a position to provide it, simply because society is finally willing to recognize that women are entitled to privileges equal to those enjoyed by men." (*Simmons*, 87 Ill. App. 3d at 660, 409 N.E.2d at 328.) The court determined that although Lilyan had a monthly income of $1,254 per month, she required an additional $302 per month to meet her needs. (*Simmons*, 87 Ill. App. 3d at 658-59, 409 N.E.2d at 326-27.) However, the court determined that James was financially able to pay only $195 per month. The court stated:

"In some failed marriages, the parties are fortunate enough to have resources adequate to satisfy both of their reasonable needs in full. The spouse seeking maintenance would therefore be awarded the whole difference between her resources and her reasonable needs. But the Simmonses, like most divorced couples, do not have enough to go around. Living apart costs most couples more than living together. The court is unable to provide both parties with the standard of living they enjoyed during the marriage; one or both have to take a cut. The court must apportion the deficit." (*Simmons*, 87 Ill. App. 3d at 661, 409 N.E.2d at 328.)

Although the court indicated that it might reach a different result in other cases, in this case the court determined the parties should "share equally the cost of the failure of the marriage." Accordingly, the court ordered James to pay maintenance of $248.50, which was $53.50 more than he could afford to pay while still meeting his reasonable needs and $53.50 less than Lilyan required in order to meet her reasonable needs. (*Simmons*, 87 Ill. App. 3d at 661, 409 N.E.2d at 329.) For a thought-provoking discussion on the effects of dissolution of marriage on dependent former spouses, see Rutherford and Tishler, *Equalizing the Cost of Divorce Under the Uniform Marriage & Divorce Act: Maintenance Awards in Illinois*, 23 Loy. U. Chi. L.J. 459 (1992).

■ *Carpel* and *Simmons* indicate that while the goal of financial independence remains, financial independence is to be measured in terms of the standard of living established during the marriage. Where there is a disparity in the earning powers of the former spouses, and the dependent former spouse cannot earn an income sufficient to become financially independent *at the standard of living established during the marriage*, the dependent former spouse may be entitled to continue to receive maintenance, if the payor spouse is in a position to provide it, even though this does not accomplish the goal of severing the economic ties of the former spouse.

■ Applying *Carpel* and *Simmons* to the present case, we find a great similarity between the Carpel and Lenkner situations. The Carpels were married for 17 years, while the Lenkners were married for 18 years. Both women worked while their husbands were in school and worked only occasionally after their husbands graduated. Like Susan, Gail cannot match the earning power of her former husband and is employable at a fraction of his income. We, therefore, find as in *Carpel*, by balancing the goal of financial independence against the dependent former spouse's entitlement to maintain a standard of liv-

ing similar to that established during the marriage, the circuit court properly determined Gail's maintenance should not be terminated based on public policy grounds. Moreover, *Simmons* indicates the balancing test must also be employed in the case of marriages in which the spouse seeking maintenance did not forego educational or employment opportunities during the marriage, but simply cannot match the earning power of her former husband. We additionally note that Gail, since the dissolution, has lived at a standard significantly lower than that established during the marriage.

For the foregoing reasons, the judgment of the circuit court of Coles County is affirmed.

Affirmed.

McCULLOUGH and COOK, JJ., concur.