COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Bray and Annunziata
Argued at Alexandria, Virginia


EVAN A. BURKHOLDER

MEMORANDUM OPINION[*] BY
v.    Record No. 2767-99-2        JUDGE RICHARD S. BRAY
JULY 11, 2000
CYNTHIA A. BURKHOLDER

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

Donald K. Butler (Morano, Colan & Butler, on
briefs), for appellant.

Richard L. Locke (Patricia A. Collins;
Mezzullo & McCandlish, on brief), for
appellee.


Evan A. Burkholder (husband) appeals an order of the trial

court that extended "maintenance" awarded his former wife

Cynthia A. Burkholder (wife) by an Illinois "Judgment of

Dissolution of Marriage" (judgment).  He complains that the

court (1) failed to properly construe Illinois law, and (2)

erroneously awarded fees to wife's attorney.  We disagree and

affirm the disputed order.

The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

_____

* Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

I.

The substantive facts are uncontroverted. The parties, married on July 31, 1968, were divorced by the subject Illinois judgment on July 31, 1995. The judgment, inter alia, awarded wife 63% of the marital estate, valued at $601,400,[1] and monthly "maintenance" (spousal support) from husband of $5,000. The order provided that such support

> commenc[e] August 1, 1995 and continu[e] thereafter until August 1, 1999, unless extended beyond that date pursuant to an order duly entered by a court of competent jurisdiction. [Wife's] maintenance award shall be reviewed in a court of competent jurisdiction within a reasonable period immediately prior to August 1, 1999 upon application by [wife] (and enrollment of this Judgment in another jurisdiction, if necessary). Upon review, the court shall consider whether the [wife's] maintenance award should continue beyond August 1, 1999, in light of all considerations including [wife's] rehabilitation program. [Wife's] maintenance award recognizes that she is receiving sufficient funds that it will be unnecessary for her to have a purchase money mortgage on the home she is expected to buy around Richmond and which may cost up to $250,000.

On October 16, 1996, wife registered the judgment with the Henrico County Juvenile & Domestic Relations District Court (J&D

---

[1] Property received by wife included 80% of the net "proceeds of sale" from the former marital home, a sum estimated by the Illinois Court to total $273,000, a 1989 Oldsmobile, valued at $9,100, $6,500 in furnishings, $27,500 for "transitional expenses," 80% of husband's profit sharing plan, and 50% of his retirement plan, valued at approximately $64,000.

-

court) pursuant to Code § 20-88.67 of the Uniform Interstate Family Support Act.

In accordance with the express provisions of the Illinois judgment, wife, in March 1999, petitioned the J&D court to extend and increase the support. Responding, husband moved the J&D court to terminate the award, also relying upon terms of the judgment. By order entered March 17, 1999, the J&D court granted the relief requested by wife, increasing the support and awarding her attorney's fees and costs. Husband appealed to the trial court, which, by order of October 25, 1999, extended the original support "until further order of a court of competent jurisdiction," together with an award of attorney's fees to wife. Husband appeals to this Court, arguing the spousal support constituted a "rehabilitative award" to wife and a proper application of governing Illinois law precluded continuation beyond August 1, 1999, and, further, that wife's pleadings lacked the prayer indispensable to an assessment of attorney's fees.

In undertaking the review necessary to determine "whether the [spousal support] award should continue beyond August 1, 1999, in light of all considerations including [wife's] rehabilitation program," in accordance with the mandate of the Illinois judgment, the court entertained evidence that addressed circumstances, both past and present, relevant to the issue.

-

Much of such evidence was before the court, without objection, through the oral proffers of counsel.

During the early years of marriage, wife was gainfully employed and supported the family, while husband attended George Washington Law School. Husband became associated with McGuire, Woods, Battle & Boothe in 1974, remaining until 1980, when he separated himself from the family, relocated to Chicago and resumed the practice of law with another firm. In 1981, the parties reconciled and the family joined defendant in Illinois, the marital residence at the time of separation and divorce. Three children were born to the union of the parties.

Husband's earnings from his profession totaled $218,813 in the year of divorce, although he earned $370,000 during the preceding year and thereafter enjoyed regular and substantial increases in income.[2] He is presently again employed by McGuire, Woods, Battle & Boothe, with a 1999 "projected" base salary of $400,000. At the time of the divorce, wife, unemployed after the first three years of marriage, was attending "paralegal school" and later received a related "certificate." She relocated to Richmond and, following an unsuccessful search for employment consistent with her training, accepted a secretarial

---

[2] Husband's base salary for the years 1990-99 was reported as: $400,000 (1999), $386,937 (1998), $381,513 (1997), $266,100 (1996), $218,813 (1995), $370,000 (1994), $368,125 (1993), $288,433 (1992), $226,382 (1991), $208,178 (1990). In addition, husband received bonuses, which totaled $76,991 in 1998.

-

position with the University of Richmond, earning approximately $20,700 annually. Husband testified that the "entry level salary" of a paralegal with McGuire, Woods, Battle & Boothe ranged "from $25,000 to $30,000."

Wife testified to a substantially reduced standard of living following the divorce, despite spousal support and earnings. A detailed account of wife's 1997-98 finances reflected expenses in excess of income, with resulting deficits of $567 and $5,987.18 in 1997 and 1998, respectively. Wife's liquid assets, exclusive of retirement accounts, consisted of $36,000 in money market and savings accounts. At the time of the hearing, she had "recently" acquired a new BMW automobile at a cost of $30,000, incurring a related monthly payment of $925.40. Recent increases in insurance costs, taxes, utility and condominium fees had worsened wife's financial plight.

Husband stipulated to "substantial income" and the attendant ability to afford an extension of the maintenance award.

## II.

The registration and enforcement of the subject judgment in Virginia is governed by the provisions of the Uniform Interstate Family Support Act (UIFSA), Code §§ 20-88.32 et seq. Once properly registered, the judgment may be enforced "in the same manner and . . . subject to the same procedures as an order issued by a tribunal of this Commonwealth." Code § 20-88.68(B).

-

However, "[t]he law of the issuing state [Illinois] governs the nature, extent, amount, and duration of current payments and other obligations of support . . . under the order."  Code § 20-88.69(A).[3]

Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act provides that a

> court may grant a temporary or permanent maintenance award for either spouse . . . after consideration of all relevant factors, including:
>
> (1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;
>
> (2) the needs of each party;
>
> (3) the present and future earning capacity of each party;
>
> (4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;
>
> (5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;
>
> (6) the standard of living established during the marriage;
>
> (7) the duration of the marriage;

---

[3] Both parties agree that Illinois law governs adjudication of the instant cause.

-

    (8) the age and the physical and emotional condition of both parties;

    (9) the tax consequences of the property division upon the respective economic circumstances of the parties;

    (10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

    (11) any valid agreement of the parties; and

    (12) any other factor that the court expressly finds to be just and equitable.

750 ILCS 5/504(a) (West 1994).

Husband, therefore, correctly asserts that the Illinois statute countenances rehabilitative alimony, support with "[t]he optimal goal . . . to provide for a severance of economic relationships between the former spouses wherever possible." In re Marriage of Lenkner, 608 N.E.2d 897, 903 (Ill. App. Ct. 1993). He argues that the judgment in issue constituted such rehabilitative maintenance, contemplating that wife would become financially independent by August 1, 1999, a circumstance established by the evidence of her current employment. Accordingly, husband reasons that the judgment and the record do not support extension of the award.

However, Illinois jurisprudence instructs that "no one factor from section 504(a) of the Act is dispositive of whether the trial court should order maintenance" and that "financial independence is not always the goal when maintenance is

-

awarded."  In re Marriage of Harlow, 621 N.E.2d 929, 934 (Ill. App. Ct. 1993).  The Lenkner court recognized that,

> under circumstances involving former spouses with grossly disparate earning potentials, [the goal of financial independence] is often not achievable in light of the dependent former spouse's entitlement to maintain the standard of living established during the marriage.  Hence, the goal of financial independence must be balanced against a realistic appraisal of the likelihood the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage.

608 N.E.2d at 904.

The Illinois judgment in issue anticipated the economic uncertainties confronting the parties by requiring a future review of the support award, "in light of all considerations, including [wife's] rehabilitative program," together with an appropriate adjustment by a "court of competent jurisdiction." Deciding an appeal on remarkably similar facts in Harlow, the Appellate Court of Illinois concluded that the presence of a rehabilitative component in a support award expressly subject to further review on a date certain did not prevent a subsequent decision to continue such maintenance.  See 621 N.E.2d at 935. To the contrary, should the evidence on review "demonstrate that a spouse is unable to support herself in a manner similar to that established during the marriage[,]" termination of the award would constitute an abuse of discretion.  Id.

-

Here, wife supported husband while he pursued his graduate education, which enabled him to pursue a successful career as a practicing attorney. Accordingly, the couple soon began to enjoy a comfortable standard of living, with husband's income steadily increasing both during and after the marriage. In contrast, wife's income, assuming an earnings potential of $25,000 or $30,000 annually, would not sustain a "reasonable approximation of the standard of living established during the marriage." Wife's expenses have consistently exceeded income in recent years, and the deficit continues to grow, notwithstanding a diminished lifestyle. Thus, without further recounting "all considerations" properly reviewed by the trial court incident to wife's motion to extend the support award, the evidence clearly supports the determination of the trial court to extend maintenance to wife, consistent with the terms of the judgment and Illinois law.

### III.

Lastly, husband argues that, because wife "did not specifically raise the issue of attorney's fees in her pleadings[,] . . . the [trial] court erred in granting [them]."

Code § 20-88.56(B) of UIFSA provides that "[i]f an obligee prevails, a responding tribunal may assess against an obligor . . . reasonable attorney's fees[.] . . . Attorney's fees may be taxed as costs, and may be ordered paid directly to the attorney, who may enforce the order in the attorney's own name."

-

Here, wife orally moved for attorney's fees in proceedings both before the J&D court and the trial court, prior to entry of the disputed order.  However, the record reflects no objection by husband to such requests until wife presented the final order to the trial court, months after the hearing.  Under such circumstances, the issue of attorney's fees was properly before the court and, thereafter, appropriately considered and awarded, without surprise or prejudice to husband.

We, therefore, affirm the order of the trial court extending the spousal support to wife and awarding her related fees and costs.  We further award wife attorney's fees attendant to this appeal and remand the proceedings for the trial court to determine the appropriate sum.

Affirmed and remanded.

-