*In re* MARRIAGE OF MARCY D. NORRIS, Petitioner-Appellee, and JOHN E. NORRIS, Respondent-Appellant.

First District (4th Division)   Nos. 1—90—0988, 1—90—2048 cons.

Opinion filed December 23, 1992.—Rehearing denied February 24, 1993.

Robert E. Senechalle, Jr., of Senechalle & Murray, of Chicago, for appellant.

John W. Damisch and David P. Pasulka, both of Barclay & Damisch, Ltd., of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Respondent, John Norris, appeals from an order of the circuit court of Cook County dissolving his marriage with petitioner, Marcy Norris, who cross-appeals. The issues for review are whether the trial court (1) erred in denying respondent's motion to quash service of summons for lack of personal jurisdiction; (2) erred in finding that there was subject matter jurisdiction; (3) abused its discretion in disposing of the marital assets and debts; (4) abused its discretion in finding that respondent did not dissipate marital assets from 1980 through 1983; (5) abused its discretion in awarding maintenance to pe-

titioner; (6) erred in awarding prospective attorney fees to petitioner; and (7) erred by not awarding petitioner the entire amount of attorney fees requested.

We affirm.

Petitioner and respondent were married on May 22, 1980, in Salida, Colorado. No children were born or adopted during the marriage. The parties permanently separated in 1985.

On December 30, 1986, petitioner filed for dissolution of marriage in the circuit court of Cook County. In her petition, she alleged that respondent lived on leased property in Lemont, Illinois. The lease was to run through April 1987. Respondent was served with summons in Purcell, Oklahoma, on January 22, 1987. At the time this proceeding was filed, and at the time of trial, petitioner was a resident of Phoenix, Arizona.

On November 12, 1987, respondent filed a special and limited appearance and a motion to quash the service of summons. Respondent alleged that he was not a resident of Illinois when the suit was filed or when he was served with summons. He further alleged that he was not subject to the jurisdiction of the Illinois courts under State law. Ill. Rev. Stat. 1985, ch. 110, par. 2—209.

In support of his motion to quash, respondent filed an affidavit and exhibits which established that respondent had vacated the leased property in Lemont, Illinois, in October 1986. The affidavit further alleged that respondent was a resident of Purcell, Oklahoma, when petitioner filed her petition for dissolution of marriage.

In response, petitioner argued that respondent had many ties with Illinois. She argued that respondent was the recipient of trust income held at a Chicago bank. Respondent also filed his tax returns from Illinois and, on them, claimed to be an Illinois resident. Further, respondent listed his residence as his Illinois attorney's office for purposes of a tax court case in 1988. Since 1987, respondent has maintained an ongoing relationship with his Cook County attorneys, and since 1980, he has retained the same Naperville, Illinois, accounting firm.

The trial court found that it had both personal and subject matter jurisdiction. In June 1989, the case proceeded to trial.

Respondent failed to appear at the trial, or for any of the other proceedings, despite having received Supreme Court Rule 137 notices. He offered no testimony to rebut any of petitioner's allegations including those related to the parties' financial status.

While married, the parties reported earnings of $200,000 and $250,000 on their joint income tax returns. Petitioner testified that

respondent is an heir to the estate of Bet-a-Million Gates, the inventor of barbed wire. She stated that as a beneficiary of several trust funds, respondent receives more than $200,000 per year and an additional $500,000 every five years. She further stated that respondent was engaged in the business of training horses.

The only item of marital property was a ranch in Arizona, where respondent has resided since 1983. The ranch was purchased in 1984 for $209,000. Prior to acquiring the ranch, petitioner resided on the property under a lease with an option to purchase. There was a cash down payment on the property in the amount of $44,000. Petitioner testified that she paid $9,000 on the property from money she borrowed from a bank. The remaining $35,000 was paid by respondent. Petitioner stated that the amount necessary to prevent foreclosure, including interest, penalties, late fees and attorney fees was $175,000. The actual mortgage balance was in the lower $160,000's. Petitioner further stated that the property was foreclosed upon after respondent failed to comply with the trial court's order to bring the mortgage current.

Petitioner testified that respondent had spent millions of dollars on drugs, alcohol, women and poor business decisions during the marriage. For example, she testified that respondent spent $70,000 for a horse that he gave to a lady friend. He later bought another horse for $140,000, which he lost. Petitioner also testified that respondent invested in a horse syndicate for $600,000, which was lost. He also paid $130,000 for a diamond ring and $45,000 for three Rolex watches, all of which were either lost or stolen. Petitioner further testified that she had debts of $58,000 which included $13,000 in arrearage on the ranch mortgage. She stated that her electric bill alone exceeded $2,000. Petitioner also stated that she was in good health and that she was taking care of boarding horses and doing "ranch hand type of work."

The court ordered respondent to quitclaim his interest in the ranch to petitioner. The court also made respondent responsible for the mortgage payments, assessments and taxes until the property was paid for in full. After petitioner testified that the ranch had been lost to foreclosure, the trial court ordered respondent to take the necessary steps to redeem the property and pay all arrearages on the mortgage. Further, the court ordered respondent to pay petitioner $5,000 per month in maintenance for a period of three years.

On appeal, respondent contends that the trial court erred in finding that he was subject to personal jurisdiction pursuant to the Illinois statute. (Ill. Rev. Stat. 1985, ch. 110, par. 2—209(a)(5).) Respondent

further contends that the trial court erred in finding that it had subject matter jurisdiction over this action.

During oral arguments before this appellate court, respondent's attorney admitted that respondent had remarried. Notwithstanding this admission, respondent requested that the trial court's order be vacated and that this case be dismissed. In the alternative, respondent requests that the service of summons on him be quashed and that all portions of the judgment for dissolution of marriage be vacated, except the portion of the order which dissolves the marriage.

■ "A person who remarries in reliance on the validity of a prior divorce decree has accepted the benefit of that decree and is estopped from challenging its validity." (*In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 634.) "This estoppel principle applies even when the divorce decree is attacked as being void for lack of subject matter jurisdiction." (*Passiales*, 144 Ill. App. 3d at 634.) The purpose of this rule was stated in *McDonald v. Neale* (1962), 35 Ill. App. 2d 140, as follows:

> "The rule of estoppel, founded upon the public policy of protecting the marital status and good character of innocent third persons, the legitimacy of children, and the rights and position of persons whose status has been finalized by decree of divorce, will not permit parties to assert inconsistent legal rights as petitioner has here attempted." *McDonald*, 35 Ill. App. 2d at 151.

■ Under the circumstances presented in this case, we believe that respondent should be estopped from challenging the validity of the trial court's order. Here, respondent has requested this court to vacate the trial court's order and dismiss this case. At the same time, however, respondent has accepted the benefit of the trial court's order by marrying another person. Respondent's actions fly in the face of the public policy interests enunciated in *McDonald* and violate a basic principle that an individual should not be permitted to assert inconsistent legal rights. We therefore find that respondent is estopped from challenging his divorce decree on the grounds of lack of subject matter and personal jurisdiction.

Turning to the merits of the dissolution order, respondent contends that the trial court abused its discretion in awarding petitioner the Arizona ranch and ordering respondent to pay all debts associated with the property.

Section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1985, ch. 40, par. 503) governs the disposition of property in a dissolution of marriage action. The court in *In*

*re Marriage of Madoch* (1991), 212 Ill. App. 3d 1007, stated as follows:

> "Under section 503(d), a court may consider the following factors when apportioning property: each spouse's contribution to or dissipation of the marital property; the value of the property set apart to each spouse; the duration of the marriage; the relative economic circumstances of the parties; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; the custodial provisions for any children; whether the apportionment is in lieu of or in addition to maintenance; the opportunity of each spouse for acquisition of capital assets and income; and the tax consequences of the property division upon the respective economic circumstances of the parties." *Madoch*, 212 Ill. App. 3d at 1015-16.

■ The distribution of marital property rests within the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. (*In re Marriage of Harding* (1989), 189 Ill. App. 3d 663, 673.) Further, "[a]n abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court." *Madoch*, 212 Ill. App. 3d at 1015.

■ The trial court found that petitioner spent seven years working on and preserving the parties' only asset, while respondent had squandered millions of dollars on drugs, alcohol, women and poor business decisions. The court further found that respondent was the beneficiary of trust funds which paid him in excess of $200,000 per year and an additional $500,000 every five years. Petitioner was 40 years old at the time of trial. Her only marketable skill was working as a ranch hand. In light of the unrebutted facts set forth in the record, and the factors in section 503(d) of the Act, we cannot conclude that the trial court abused its discretion in awarding petitioner the Arizona ranch.

■ Petitioner cross-appeals, contending that the trial court erred in finding that respondent did not dissipate marital assets during the years 1980 to 1983. Dissipation is the use of marital property for one spouse's sole benefit or for a purpose unrelated to the marriage at a time when it is undergoing an irreconcilable breakdown. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 549.) Whether a spouse's conduct constitutes dissipation depends upon the facts of each case, and the trial court's finding on this issue will not be reversed unless it is against the manifest weight of the evidence. *In re Marriage of Rai* (1989), 189 Ill. App. 3d 559, 565.

■ Petitioner further argues that although money respondent received from his trust funds during this time began as nonmarital property, the assets were transmuted to marital property after they were deposited into the parties' joint bank account. "Assets purchased with separate funds remain separate property regardless of the number or type of postmarital exchanges as long as there has been no evidence of an intent to transmute." *In re Marriage of Siddens* (1992), 225 Ill. App. 3d 496, 499.

■ The trial court stated that the testimony showed that respondent "intended to continue to receive his inheritance and to use it in a manner that he had used it prior to the marriage, and that is basically for his benefit." The trial court found that respondent's assets had not been transmuted to marital property and that an irreconcilable breakdown of the marriage had not occurred until 1985. Petitioner testified that in 1982 she moved to Mexico to live with respondent. She further testified that respondent had visited her in 1983, 1984 and 1985. During this time, petitioner testified, the parties talked about "ending up together." Further, in 1984, respondent paid $35,000 to purchase the Arizona ranch and agreed to have the property placed in joint tenancy. Based on this evidence, a finding by the trial court that the marriage was not undergoing an irreconcilable breakdown in 1980 through 1983 is not against the manifest weight of the evidence. We therefore find that the trial court did not abuse its discretion in finding that respondent did not transmute nonmarital property to marital property or dissipate marital assets during the years 1980 through 1983.

■ Respondent also contends that the award of maintenance to petitioner of $5,000 per month for three years was an abuse of discretion. The court in *In re Marriage of Madoch* (1991), 212 Ill. App. 3d 1007, stated as follows:

> "Section 504(a) of the Act provides that a court may grant maintenance only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; is unable to support herself through appropriate employment; or is otherwise without sufficient income. [Citation.] Maintenance is to be awarded in such amounts and for such periods of time as the court deems just, after consideration of various factors, including the following: the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; the standard of living established during the marriage; the age and the physi-

cal and emotional condition of both parties; and the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance." (*Madoch*, 212 Ill. App. 3d at 1016-17.) Further, a maintenance award will not he reversed unless it is an abuse of discretion or the award is against the manifest weight of the evidence. *In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 227.

In this case, we do not believe that the monthly maintenance awarded by the court was an abuse of discretion. Respondent argues that petitioner does not need maintenance because her expenses of $2,540 only exceed her income by $40. Although respondent testified that she had a $40 shortfall, this testimony was only in relation to the income and expenses generated by the ranch business, not her personal living expenses. Petitioner's affidavit showed that her personal expenses exceeded her income by $5,167 per month. Respondent did not cross-examine petitioner on her affidavit nor did he file a brief on this issue as requested by the trial court. Petitioner testified that with the additional capital she would be able to expand the ranch business and generate long-term income. She also testified that respondent had agreed with this proposition and offered to help finance the project, but reneged on his agreement. Petitioner also testified that she could earn approximately $150 per week and possibly living accommodations elsewhere, if the ranch business folded. In light of the circumstances presented in this case, we find that the trial court did not abuse its discretion in awarding maintenance to petitioner.

Respondent also contends that the trial court erred in awarding prospective attorney fees to respondent.

■ Section 508(a) of the Act provides that prospective attorney fees may be awarded in a dissolution proceeding. (Ill. Rev. Stat. 1985, ch. 40, par. 508(a).) However, "prospective awards should be made cautiously and are to be based upon some viable evidentiary basis." (*In re Marriage of Pittman* (1991), 213 Ill. App. 3d 60, 63.) The party seeking an award for prospective attorney fees must show that he or she cannot afford to pay and that the other spouse can afford to do so. (*Pittman*, 213 Ill. App. 3d at 63.) Lastly, prospective awards "rest in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." *Pittman*, 213 Ill. App. 3d at 63.

In the case at bar, petitioner asked the trial court for a specific amount of fees and presented evidence concerning the cost to de-

fend this appeal. Petitioner's attorney testified about his experience and how these factors led him to the figure requested. Based on the testimony presented at trial, we find that the trial court did not abuse its discretion in awarding petitioner a prospective award for attorney fees.

■■ Lastly, we consider whether the trial court erred by not awarding petitioner the entire amount of attorney fees requested. The trial court ordered that petitioner's attorney be paid $9,000 despite his fee petition requesting $17,810.

The hearing on petitioner's request for attorney fees lasted two days, as long as the trial itself. The court reviewed exhibits and heard arguments. Although the case had been pending for three years, the court noted that little discovery had been conducted by petitioner's attorney. The court found that petitioner's attorney was "evasive to say the least" in his testimony at the fee hearing. It is apparent from the record that the trial court reviewed the material submitted by petitioner's attorney and was in the best position to determine the reasonableness of a fee award. We therefore find that the trial court did not abuse its discretion in not awarding petitioner the entire amount of attorney fees requested.

For the foregoing reasons, we affirm the ruling of the circuit court.

Affirmed.

McMORROW and LINN,* JJ., concur.

---

*Justice McMorrow participated in the disposition of this case prior to becoming a member of the supreme court of Illinois. Justice Linn participated in the disposition of this case prior to his retirement.