*In re* MARRIAGE OF RODNEY L. BRENT, Petitioner-Appellant, and DI-ANE BRENT, Respondent-Appellee.

Fourth District   Nos. 4—93—0402, 4—93—0686 cons.

Argued January 18, 1994.—Opinion filed June 27, 1994.

McCULLOUGH, P.J., concurring in part and dissenting in part.

Michael J. O'Rourke (argued), of Bloomington, for appellant.

Helen E. Ogar (argued), of Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Rodney Brent appeals from the order of the circuit court denying his request to modify his obligation to pay maintenance to his former wife, Diane Brent, and from an order granting Diane's petition for prospective attorney fees in connection with the appeal. Rodney alleges the court erred in construing a settlement agreement incorporated into the supplemental judgment of dissolution to preclude modification unless Diane was employed for at least 10 hours per week. He further alleges the award of attorney fees was improper because this court has previously disapproved prospective attorney fee awards and the evidence does not support such an award in this case. We reverse on the construction of the supplemental judgment of dissolution and affirm the order regarding attorney fees.

## I. FACTS

Rodney and Diane Brent were married in June 1967. Their marriage was dissolved in December 1988. The parties had three children: Mark, Laura, and Elizabeth, ages 19, 17 and 15, respectively, at the time of the dissolution.

Diane received a bachelor's degree in elementary education in 1966. She taught in an elementary school for two years, one year prior to her marriage to Rodney and a second year after her marriage but prior to the birth of Mark. After the birth of Mark, Diane did not return to teaching full-time; however, she did substitute teach for a year while Rodney was in graduate school. During the marriage, Rodney sold insurance through his father's insurance agency, the Lyle Brent Agency. At the time of the dissolution Rodney and Diane owned all of the stock in the agency.

Upon dissolution of their marriage, the parties entered into an agreement with respect to the custody of the minor children, property distribution, and maintenance, the terms of which were incorporated into the supplemental judgment of dissolution filed in December 1988. This judgment provided (1) Rodney received custody of the two minor children; (2) Rodney received the family home, all of the stock in the insurance agency, and all of the pension plans and retirement benefits; (3) Diane received $6,450 cash; and (4) Rodney agreed to purchase the Bloomington condominium which Diane had been renting. The parties believed the condominium could be purchased for $58,000 to $60,000, and Rodney would be required to make a down payment of $6,000. Rodney agreed to make the mortgage payments, while Diane is responsible for the maintenance fees, assessments and taxes. The condominium was placed in a land trust naming Rodney as the beneficiary. Diane holds Rodney's beneficial interest in the land trust as security for Rodney's performance. The judgment further provided (5) Rodney pay maintenance of $1,500 monthly to Diane for an indefinite period of time. With respect to modification and termination of maintenance, the judgment provided:

"[Rodney] shall pay Diane the sum of [$]1[,]500 per month as and for maintenance for an indefinite period of time. *In addition to* the statutory provisions for modification and termination of maintenance, *and as a limitation on* those statutory provisions, maintenance shall in no event be increased. It shall be decreased upon [Diane] becoming employed. The decrease in maintenance shall be by an amount equal to 50% of her net income, as net income is defined in the Illinois Marriage and Dissolution of Marriage Act, except, maintenance shall be reduced only if [Diane] is employed by an employer required under law to prepare a W-2 form and such employment is for at least 10 hours per week." (Emphasis added.)

In December 1991, Diane and daughter Elizabeth (who had resided with Diane since November 1990) moved to Georgia. Rodney agreed the move would be a good idea and paid their moving expenses. Diane rented the Bloomington condominium and began to receive $650 per month in rental income.

In March 1992, Rodney unilaterally decided to terminate the maintenance payments to Diane. In July 1992 Rodney filed a petition requesting modification of maintenance and requesting the court to order the sale of the condominium. In October 1992, Diane and Elizabeth moved back to Bloomington and began residing with Diane's parents. Diane testified Rodney's failure to make the maintenance payments rendered her unable to pay rent and other living expenses, so the move was necessary.

At the time of the hearing on the petition, Diane's only source of income was the rental income from the condominium. Diane had received two offers of part-time employment for $5 per hour while in Georgia but she turned down both jobs as she had already planned to move back to Bloomington. Since the dissolution of the marriage, Diane has been hospitalized for surgery on her knee, treated for "Atoxia" (a balance disorder), and treated for depression, stress and various other mental disorders. Diane testified she would like to obtain employment, but had difficulty due to her age (49 years old), lack of skills, lack of employment history, and mental state. The evidence deposition of Dr. Melvin French, a psychologist, was admitted into evidence. French testified Diane has long-standing psychological and emotional problems which had surfaced as the result of lack of stability and stress. French opined Diane was unable, at the present time, to maintain employment, but that with treatment and medication she would be able to do so in the future.

In 1991 Rodney entered into an agreement with the Van Gundy Insurance Agency (Van Gundy) which essentially amounted to a sale of the Lyle Brent Agency's (Brent agency) accounts and a covenant not to compete. Pursuant to their agreement, Rodney received Van Gundy stock valued at $25,000. Van Gundy also paid Rodney and his father $196,494.50, the bulk of which was paid in 1991, with the balance to be paid in 1992. Of this amount, all but $30,000 was to be paid either to Rodney directly, or to the Brent agency, of which Rodney was the sole shareholder. Rodney testified he no longer had any of the money he had been paid. Rodney testified he gave $30,000 of this money he had been paid to his father to supplement the $30,000 paid by Van Gundy, because they had agreed the father deserved it in exchange for the years of service he dedicated to the Brent agency. The balance of the money, Rodney testified, was used to pay debts. Pursuant to the agreement with Van Gundy, Rodney became a part owner of Van Gundy and sold insurance for it.

Rodney testified he earned income of $6,500 to $7,500 per month, in addition to a yearly bonus of approximately $5,000, and had expenses of $9,200 per month. A significant portion of these expenses consisted of voluntary payments made to or on behalf of his adult children, various life insurance policies he maintained in addition to those provided by his employer, and country club and entertainment expenses.

At the conclusion of the evidence, the trial court found both of the parties had some changes and problems, and their situations may be different than those which existed previously. However, the court found its ability to grant Rodney the relief requested was precluded

by the supplemental judgment of dissolution. Rodney's purchase of a Bloomington condominium for Diane was a portion of the property settlement, which would only be modifiable in extraordinary circumstances not present in this case. The court additionally found its ability to modify maintenance had been limited by the December 1988 supplemental judgment of dissolution. The court stated:

> "[Diane] bargained away her ability to increase maintenance. She is prohibited by the agreement from ever under any circumstances having a maintenance increase. The court believes that [Diane] received in exchange for that the restriction on the part of [Rodney]'s ability to decrease maintenance. The only ability retained by [Rodney] to decrease maintenance was in certain circumstances, specifically when [Diane] was employed for 10 hours per week or more. [Diane] is not now employed nor has she been for some time and there is no requirement in the agreement that she in fact be employed."

Rodney appeals from the trial court's ruling with respect to maintenance (No. 4—93—0402); he does not take issue with the court's ruling regarding the condominium. Diane filed a motion for prospective attorney fees of $1,500, which she believed would be incurred defending the trial court's order on appeal. The trial court awarded Diane prospective partial attorney fees of $1,000; Rodney also appeals this order (No. 4—93—0686). The two appeals have been consolidated.

## II. MODIFICATION OF MAINTENANCE

Rodney alleges the trial court erred in construing the settlement agreement entered into by the parties to preclude reduction in maintenance absent Diane's employment for at least 10 hours per week. The legislature has set forth certain conditions upon which maintenance will be terminated or modified. However, parties to a dissolution action are permitted to enter into settlement agreements which alter the court's ability to terminate and modify maintenance. Where such agreements are made, their terms take precedence over the statutory conditions upon which maintenance may be terminated or modified. The dispute in the present case arises because it is not clear whether the provisions of the parties' agreement regarding the circumstances under which maintenance may be reduced operate as an addition to, or a limitation upon, the statutory grounds for modification.

■ Had the parties chosen not to enter into an agreement regarding the termination and modification of maintenance, the trial court would have the ability to terminate or modify maintenance upon the occurrence of the conditions set forth in section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev.

Stat. 1991, ch. 40, par. 510(c)). This section provides, in the absence of an agreement between the parties, the obligation to pay future maintenance is *terminated* upon the death of either party, the remarriage of the recipient party, or the cohabitation of the recipient party with another person on a resident, continuing conjugal basis. (Ill. Rev. Stat. 1991, ch. 40, par. 510(c).) Unless otherwise provided in an agreement between the parties, maintenance may be *modified* upon a showing of a substantial change of circumstances. Ill. Rev. Stat. 1991, ch. 40, par. 510(a).

The courts have defined what constitutes a substantial change in circumstances. A substantial change in circumstances warranting modification may occur upon involuntary change or loss of employment, voluntary change of employment made in good faith (*In re Marriage of Kowski* (1984), 123 Ill. App. 3d 811, 814, 463 N.E.2d 840, 843), a change in the needs of the recipient spouse or the ability of the payor spouse to make the payments (*In re Marriage of Pedersen* (1992), 237 Ill. App. 3d 952, 956, 605 N.E.2d 629, 632-33), or the lack of good-faith effort on the part of the recipient spouse to achieve economic independence (*In re Marriage of Lenkner* (1993), 241 Ill. App. 3d 15, 19, 608 N.E.2d 897, 900). Rodney requested modification of maintenance alleging a change in his ability to pay maintenance, a change in Diane's need for maintenance, and Diane's failure to obtain employment. Thus, if the Brents had not entered into a settlement agreement containing a provision regarding termination and modification of maintenance, the trial court would be empowered to modify maintenance if it found Rodney proved there had been a substantial change of circumstances.

■ Section 502(f) of the Act expressly permits the parties to enter into an agreement which precludes or limits modification or termination of maintenance under section 510. (Ill. Rev. Stat. 1991, ch. 40, pars. 502(f), 510.) The parties may agree their provisions as to maintenance will be nonmodifiable or modifiable only in accordance with the terms of the agreement. (Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 403 (Smith-Hurd 1980).) The purpose behind allowing the parties to agree, in advance, to the circumstances under which maintenance may be modified " 'maximizes the advantages of careful future planning and eliminates uncertainties based on the fear of subsequent motions to increase or decrease the obligations of the parties.' " Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 403 (Smith-Hurd 1980), quoting 9A U.L.A. 138 (1979).

Where the parties agree to the terms under which maintenance may be modified or terminated, their terms (incorporated into the

judgment) take precedence over the provisions for modification and termination as set forth in section 510 of the Act. (*In re Marriage of Tucker* (1986), 148 Ill. App. 3d 1097, 1099, 500 N.E.2d 578, 579.) However, the intent of the parties to preclude or limit modification or termination of maintenance must be *clearly manifested* in their agreement. *In re Marriage of Scott* (1990), 205 Ill. App. 3d 561, 564, 563 N.E.2d 995, 997.

Had the Brents expressly agreed maintenance could be terminated or modified *only* under the circumstances set forth in their agreement, the agreement would operate as a *limitation* on the court's ability to modify maintenance; termination or modification based upon the statutory factors would be precluded. Similarly, had the Brents expressly agreed maintenance could be terminated or modified under the statutory provisions *or* under the circumstances set forth in the agreement, the agreement (as incorporated in the judgment) would provide bases for termination in *addition* to those set forth in section 510. However, the Brents' settlement agreement sets forth provisions regarding modification and termination of maintenance which are to operate "in addition to the statutory provisions for modification and termination, and as a limitation on those provisions." Thus, the agreement as reflected in the supplemental judgment purports to operate as both an *addition to* and a *limitation upon* the court's ability to modify maintenance. The agreement then sets forth two provisions without specifying whether each is to operate as an addition or a limitation.

The first provision, "maintenance shall in no event be increased," clearly addresses the court's ability to modify maintenance, *limiting* the court's ability to increase maintenance. The second provision also addresses the court's ability to modify maintenance, namely, the reduction of maintenance as the result of Diane's employment. However, it is not clear from the terms and structure of the agreement whether this provision is intended as an *additional* basis for reduction of maintenance, or whether it is intended to provide the *exclusive* basis for modification, thus operating as a *limitation* upon the court's ability to modify maintenance.

In order to evaluate the construction of the settlement agreement set forth in the supplemental judgment, we must first determine whether the provision for reduction of maintenance is intended to provide a basis for reduction of maintenance *in addition* to the statutory basis for reduction (substantial change in circumstance), or to *prohibit* reduction based upon a substantial change in circumstances, permitting it *only* upon Diane's employment in enumerated circumstances. If the reduction provision is interpreted as an addition

to the statutory basis for modification, we must also determine whether the limitation appearing at the end of the clause, "except maintenance shall be reduced only if [Diane] is employed *** for at least 10 hours per week," operates as a limitation only on modification based on Diane's employment, or a limitation on the court's ability to reduce maintenance upon either a substantial change in circumstances or as the result of Diane's employment.

Diane urges us to adopt the first possible interpretation, namely that the reduction provision operates as a limitation upon the court's ability to reduce maintenance. Under this interpretation, the reduction provision is deemed to set forth the *exclusive* basis upon which maintenance may be reduced, thus precluding reduction as the result of a substantial change in circumstances. Under this approach maintenance may and will be reduced upon Diane's employment for at least 10 hours per week. Reduction of maintenance will not, however, be permitted as the result of a substantial change in circumstances, *e.g.*, if Rodney becomes unemployed, suffers a reduction in income or increase in expenses, if Diane fails to seek and maintain employment, or if her need for maintenance changes.

Since, as noted above, the provision regarding an increase in maintenance operates as a limitation on the court's ability to terminate or modify maintenance, the acceptance of Diane's argument that the reduction provision also operated as a limitation upon the court's authority would result in a construction under which *both* the provision prohibiting an increase in maintenance and the provision regarding its reduction would be interpreted as *limitations* on the bases for modifying maintenance. This would seem to ignore the precatory language indicating the provisions were to be in addition to *and* a limitation upon the statutory provisions for modification and termination of maintenance.

Moreover, we reject this interpretation because the agreement does not clearly and expressly permit reduction of maintenance *only* in the event of Diane's employment. An agreement which clearly and expressly limits a court's ability to modify maintenance will preclude modification of maintenance upon grounds not specified in the agreement. For example, in *Simmons v. Simmons* (1979), 77 Ill. App. 3d 740, 741, 396 N.E.2d 631, 632, the parties agreed " 'in no event is the amount of alimony to be modifiable except for death or remarriage of wife.' " Eileen Simmons, the recipient spouse, requested a modification of maintenance, in the form of an increase, based upon a substantial change in circumstances. The trial court granted the request, ordering a modification of maintenance. (*Simmons*, 77 Ill. App. 3d at 743, 396 N.E.2d at 632.) Reversing, the second district

found the language of the parties' agreement was a clear expression of intent to severely restrict modification of maintenance. *Simmons*, 77 Ill. App. 3d at 743, 396 N.E.2d at 634.

However, where the language utilized by the parties is not an express preclusion of modification, the court retains its authority to modify maintenance. Thus, in *In re Support of Bowman* (1980), 89 Ill. App. 3d 110, 111, 411 N.E.2d 567, 568, this court found the language " '[t]he monthly payments to Wife for her support and maintenance shall continue until her death or remarriage' " did not limit the court's ability to modify maintenance. Specifically, we found language which has been held to preclude a modification of maintenance is generally much stronger and more specific, such as that employed in *Simmons*, than the language employed by the Bowmans. *Bowman*, 89 Ill. App. 3d at 112, 411 N.E.2d at 569.

Similarly, in *Scott* (205 Ill. App. 3d at 563, 563 N.E.2d at 996), the parties agreed maintenance would terminate " 'upon the death of the [recipient], upon the occurrence of any of the factors set forth in *** [s]ection 510.' " The trial court found this agreement precluded modification of maintenance. (*Scott*, 205 Ill. App. 3d at 563, 563 N.E.2d at 997.) Reversing, this court noted the agreement referred to section 510 in its entirety and therefore permitted modification of maintenance based upon a substantial change in circumstances, as set forth in section 510(a). (*Scott*, 205 Ill. App. 3d at 565-66, 563 N.E.2d at 998.) We additionally noted "if parties to a marital settlement agreement intend, on dissolution, to preclude judicial modification of maintenance as to amount, it may be better practice to do so in clear and express terms in a paragraph separate from that limiting termination of maintenance." *Scott*, 205 Ill. App. 3d at 566, 563 N.E.2d at 999.

■ Thus, following our earlier decisions in *Bowman* and *Scott*, we find the Brents' settlement agreement as reflected in the supplemental judgment of dissolution did not expressly limit reduction of maintenance to Diane's employment, and therefore did not preclude reduction of maintenance based upon a substantial change of circumstances. Just as the agreement in *Scott*, by referencing section 510 in its entirety, permitted modification based upon a substantial change in circumstances as set forth in section 510(a), the agreement in the present case, by stating the provisions were *"in addition to the statutory provision* for modification and termination of maintenance," also permits modification upon a substantial change in circumstances.

Contrary to Diane's contention, this construction does not ignore the language "and as a limitation upon those statutory provisions." This is because the agreement provides the provisions are made in

addition to *and* as a limitation upon the statutory provisions for modification and termination of maintenance. The provision prohibiting an increase in maintenance is construed as the *limitation* upon the court's ability to modify maintenance while the provision regarding reduction of maintenance is construed as the *addition to* the statutory provision regarding termination and modification of maintenance.

We must now determine whether the clause "except maintenance shall be reduced only if [Diane] is employed *** for at least 10 hours per week" operates as a limitation on the court's ability to modify maintenance under *any circumstances*, or only as a limitation upon modification as the result of Diane's *employment*. One interpretation is this clause operates as a limitation on the court's ability to modify maintenance under any circumstances (*e.g.*, whether maintenance is modified as the result of a substantial change in circumstances or as the result of Diane's employment). Thus, if the court were to find modification appropriate based upon a substantial change in circumstances, for example, Rodney's loss of employment, it would be precluded from ordering such modification, unless and until Diane procured employment for at least 10 hours per week.

Another interpretation, which is that advanced by Rodney, is that the clause "except maintenance shall be terminated only if [Diane] is employed *** for at least 10 hours per week" operates as a limitation *only* on the court's ability to modify maintenance as the result of Diane's *employment*. Thus, the court's ability to modify maintenance as the result of a substantial change in circumstances would not be subject to any limitation. If, however, modification of maintenance was sought as the result of Diane's employment, rather than upon a substantial change of circumstances, the ability of the trial court would be limited as the court would be empowered to modify maintenance only if Diane was employed for at least 10 hours per week.

■ Of these interpretations, the latter is the more sound. This is because the clause "except maintenance shall be reduced only if [Diane] is employed *** for at least 10 hours per week" is located in the same sentence as the provision for reduction of maintenance upon employment. Thus, it would appear to relate to modification on that basis. Had it been intended as a limitation upon the court's ability to reduce maintenance for *any* reason, including a substantial change in circumstances, it should have appeared in a separate sentence or expressly conveyed the extent of its scope. This interpretation is consistent with our previous decisions in *Bowman* and *Scott*, which require a limitation on the court's ability to modify maintenance to be clear and express.

We therefore reverse the trial court's construction of the settlement agreement and remand to the trial court for a determination of whether a reduction of maintenance based upon a substantial change in circumstances is appropriate. We note the receipt of additional evidence will be unnecessary. The parties have presented evidence on the issue of changed circumstances and on remand the trial court may simply review the record and make a determination of whether Rodney has proved a substantial change in circumstances warranting a reduction in maintenance, and, if so, the amount of maintenance to be paid.

### III. FEES

Rodney next contends the trial court erred in granting Diane's petition for prospective attorney fees. Although acknowledging other districts of the appellate court have upheld grants of prospective attorney fees, Rodney notes this court has previously disapproved such awards. Diane argues the decisions of this court disapproving prospective attorney fee awards occurred prior to the amendment to section 508 of the Act, and under the amended section 508, prospective attorney fees are expressly permitted. Ill. Rev. Stat. 1991, ch. 40, par. 508.

Prior to 1988, section 508 of the Act provided a trial court could order one spouse to pay the costs and attorney fees necessarily incurred by the other spouse in connection with the defense of an appeal. (Ill. Rev. Stat. 1987, ch. 40, par. 508(a)(3).) The language "necessarily incurred" implied the fees had already been incurred and did not, upon a literal reading, seem to encompass fees which had yet not been incurred, but were expected in the future. There was a split of authority between the districts of the appellate court regarding whether this statute conferred the authority upon the trial court to make a prospective attorney fee award for the defense of an appeal.

The first and the third districts determined prospective attorney fee awards, in connection with the defense of an appeal, were proper. The courts reasoned awards of attorney fees were collateral to the matter on appeal, and would not interfere with the pending appeal (see *In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 1061, 419 N.E.2d 598, 600), and prohibition of such awards would be tantamount to the foreclosure of or an impediment to the less wealthy former spouse's ability to defend an appeal. See *In re Marriage of Pahlke* (1987), 154 Ill. App. 3d 256, 264, 507 N.E.2d 71, 77; *In re Marriage of McBride* (1981), 102 Ill. App. 3d 84, 87, 429 N.E.2d 867, 870.

The second and fourth districts, however, rejected the decisions

of the first and third districts, finding the better interpretation of section 508 to be that the trial court does not have jurisdiction to award prospective attorney fees. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 623-24, 435 N.E.2d 1361, 1367; *In re Marriage of Legge* (1982), 111 Ill. App. 3d 198, 211-12, 443 N.E.2d 1089, 1098.) In *Legge*, this court found the award of prospective attorney fees improper for two reasons. First, we noted absent an explicit statutory exception, a trial court may not enter an order in a case under review after the jurisdiction of the appellate court has attached. This court found an award of prospective attorney fees constitutes transfers of property from one spouse to another and could significantly alter the property distribution aspects of a dissolution order under review. (*Legge*, 111 Ill. App. 3d at 211-12, 443 N.E.2d at 1098.) Second, this court found the propriety of an award of prospective fees is inherently difficult to review as there is no evidence in the record of the amount of time actually expended by the attorney or the propriety of the fee in relation to the fee obtained. *Legge*, 111 Ill. App. 3d at 212, 443 N.E.2d at 1098.

Section 508(a) was amended, effective January 1, 1988. (See Pub. Act 85—357, § 1, eff. January 1, 1988 (1987 Ill. Laws 1957).) It now provides for the award of fees which have been incurred or are expected to be incurred. (Ill. Rev. Stat. 1991, ch. 40, par. 508(a).) This amendment was a response to the conflict among the districts regarding whether a prospective attorney fee award was permissible. The purpose was to make clear prospective attorney fees could be awarded under the Act. *In re Marriage of Pagano* (1992), 154 Ill. 2d 174, 188, 607 N.E.2d 1242, 1248-49.

Rodney argues we should continue to prohibit the award of prospective attorney fees, despite the express language of the statute permitting such awards. Rodney requests this court to disapprove prospective attorney fee awards for the two reasons articulated in *Legge*, namely, the difficulty of reviewing the propriety of an award of fees not yet incurred and interference with a case after appellate jurisdiction has attached.

■ Rodney's contention must be rejected. Our reasons for refusing to permit a prospective award of fees in connection with an appeal do not remain viable in light of the legislative amendment to section 508(a) of the Act. The legislature has, in an amendment to section 508(a), expressly provided for the prospective attorney fee award in conjunction with an appeal. (Ill. Rev. Stat. 1991, ch. 40, par. 508(a)(3).) Simply put, this court does not have the authority to refuse to enforce the statutes enacted by the legislature. Thus, we cannot absolutely prohibit the prospective fee award where the legislature has expressly sanctioned such awards.

Moreover, one of the reasons, articulated in *Legge,* for our disapproval of an award of prospective fees during the pendency of an appeal, was that in the absence of an explicit statutory exception, a trial court may not enter an order under review after appellate jurisdiction has attached. (*Legge,* 111 Ill. App. 3d at 211, 443 N.E.2d at 1098.) The amended section 508(a)(3) of the Act is an explicit statutory exception permitting such an award after appellate jurisdiction has attached. An award of prospective attorney fees in connection with an appeal can only be made during the pendency of such an appeal. An award of fees made after the appeal is resolved would not be *prospective* fees. An award of prospective fees in connection with an appeal could not be made prior to the attachment of appellate jurisdiction (*e.g.*, the filing of the notice of appeal) because it would not be known whether an appeal would, in fact, be filed, or the number and complexity of the issues which might be raised.

The concern, expressed by this court in *Legge,* that the propriety of awards of prospective attorney fees is difficult to review—as there is no evidence in the record of the amount of time actually expended by the attorney or the propriety of the fee in relation to the result obtained—may continue to be troubling. (*Legge,* 111 Ill. App. 3d at 212, 443 N.E.2d at 1098.) However, our concern can be addressed by adoption of the cautionary language employed by the first and fifth districts. Specifically, these courts have noted awards of prospective attorney fee awards are to be made cautiously and only upon a viable evidentiary basis. (*In re Marriage of Norris* (1992), 252 Ill. App. 3d 230, 237, 625 N.E.2d 6, 12; *In re Marriage of Pittman* (1991), 213 Ill. App. 3d 60, 63, 571 N.E.2d 1196, 1197.) The party seeking an award of prospective attorney fees should request fees in a specific amount and present evidence in support of the need and propriety of that amount of fees. (See *Norris,* 252 Ill. App. 3d at 237-38, 625 N.E.2d at 12.) As with any award of attorney fees under section 508(a) of the Act, the party seeking such an award must show his or her inability to pay the fees and the ability of the other former spouse to do so. *Norris,* 252 Ill. App. 3d at 237, 625 N.E.2d at 12; *Pittman,* 213 Ill. App. 3d at 63, 571 N.E.2d at 1197-98.

■ Finally, Rodney alleges, assuming the trial court had authority to enter a prospective attorney fee award, the trial court's award of $1,000 partial prospective attorney fees was not supported by the evidence. Specifically, Rodney alleges the trial court failed to recognize he does not have the ability to pay Diane's attorney fees because his monthly expenses of $9,200 exceed his monthly income of $6,500 to $7,500. We reject this contention.

The determination of whether to award prospective attorney fees

rests within the sound discretion of the trial court. (*Norris*, 252 Ill. App. 3d at 237, 625 N.E.2d at 12.) In the present case, Rodney does not take issue with the amount of fees. Rather, Rodney alleges his ability to pay the fees was not established. The court was in receipt of evidence indicating Diane's income was $650 per month from the rental of the condominium, and $1,500 per month maintenance (when Rodney complied with his obligation to make maintenance payments) for a total of $2,150 per month. Diane has no assets but has a significant amount of debt, much of which was incurred during the months Rodney *failed* to make maintenance payments. Rodney, conversely, has assets including stock in an insurance agency and a condominium and has monthly income of $6,500 to $7,500. Although Rodney claims his expenses exceed his income, the trial court could have reasonably found these expenses did not constitute reasonable living expenses and did not preclude his ability to pay the fees. Accordingly, we determine the trial court did not abuse its discretion in ordering Rodney to pay partial prospective attorney fees.

## IV. CONCLUSION

For the foregoing reasons, the award of attorney fees is affirmed. The trial court's construction of the settlement agreement is reversed and this matter remanded for a determination of whether a modification of maintenance, based on a substantial change in circumstances, is appropriate.

No. 4—93—0402, Reversed and remanded with directions.
No. 4—93—0686, Affirmed.

LUND, J., concurs.

PRESIDING JUSTICE McCULLOUGH, concurring in part and dissenting in part:

I agree with the award of attorney fees as made by the trial court. I disagree with the majority in reversing and remanding with directions for the trial court to determine whether there is a substantial change in circumstances. As the majority indicates, the trial court on remand will not need and should not receive additional evidence concerning a change in circumstances.

Because all of the evidence was presented to the trial court concerning a substantial change in circumstances and at the risk of usurping the prerogative of the trial court, I would affirm the trial court on the basis that the petitioner has not shown a substantial change in circumstances.