NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250568-U

NO. 4-25-0568

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 7, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF ELLEN T., | ) | Appeal from the |
| Petitioner-Appellee, | ) | Circuit Court of |
| and | ) | Sangamon County |
| NICHOLAS T., | ) | No. 21D198 |
| Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Tawnya L. Frioli, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, finding (1) the language in the marital settlement agreement was insufficient to render respondent's maintenance obligation nonmodifiable and (2) respondent failed to demonstrate any error in the trial court's award of child support.

¶ 2     Petitioner, Ellen T., and respondent, Nicholas T., married in 2005. Their marriage was dissolved in 2021. As part of the dissolution proceedings, the trial court incorporated the parties' marital settlement agreement (MSA) into the judgment of dissolution. The MSA provided that Nicholas would pay maintenance to Ellen in the amount of $3,000 each month for a term of four years. The MSA also provided that "[m]onthly maintenance may be paid off in a lump sum by [Nicholas] if he chooses."

¶ 3     Later, Ellen filed motions to modify maintenance and child support, alleging a change in circumstances in that Nicholas's income had increased and Ellen was primarily

responsible for caring for and raising their children. Ultimately, the trial court modified the term of maintenance through April 2031, kept the monthly amount at $3,000, and increased Nicholas's monthly child support payments to $4,108.

¶ 4       Nicholas appeals, arguing the trial court erred by (1) improperly construing the MSA as modifiable and (2) using standardized, rather than individualized, deductions to calculate his child support obligation. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6                 A. The Dissolution of Marriage and Initial Proceedings

¶ 7       Ellen and Nicholas married in 2005. The marriage produced two children. In the last year of their marriage, Ellen worked as a baker in Springfield, Illinois; Nicholas worked as a physician at Southern Illinois University.

¶ 8       In May 2021, the parties dissolved their marriage. The trial court incorporated the parties' MSA into its judgment of dissolution. In doing so, by docket entry, the court stated the "settlement agreement [was] presented and approved by the court as being fair and equitable to the parties." The MSA contained the following section relevant to this appeal: "[Nicholas] shall pay to [Ellen] maintenance/spousal support in the amount of $30,000 (already paid) plus $3,000.00 per month for the following period: 4 years. Monthly maintenance may be paid off in a lump sum by [Nicholas] if he chooses."

¶ 9       The parties thereafter entered into an agreed order regarding child support in which Nicholas agreed to pay Ellen a total of $1,498.56 each month beginning in September 2022. Nicholas also agreed to pay for all daytime childcare expenses for the minor children.

¶ 10      B. Proceedings on Ellen's Petitions to Modify Child Support and Maintenance

¶ 11      In September 2024, Ellen filed a motion to modify Nicholas's child support

obligations. In her motion, Ellen alleged Nicholas's income had substantially increased and there was a substantial change in circumstances due to that change in income, warranting a modification in child support.

¶ 12       In February 2025, Ellen filed a "Motion to Extend Maintenance" based on significant changes in parenting time and employment. According to Ellen's motion, since the dissolution of the marriage, Nicholas had relocated to Ohio and was now earning "in excess of $500,000 per year." Ellen, on the other hand, earned "approximately $24,000 per year" on a part-time basis. Ellen further alleged that she was "primarily responsible for caring for and raising the minor children" after being granted "all regular weekly parenting time during the school year." Ellen requested the trial court modify maintenance in the amount the court saw fit.

¶ 13       In response, Nicholas filed a motion for summary judgment, which Ellen responded to. Later, in his reply to Ellen's response to his motion for summary judgment, Nicholas argued that "maintenance in the present case is not reviewable" because the MSA, as reflected in the judgment, "clearly show[ed] that both [Ellen] and [Nicholas] agreed that maintenance would terminate at the end of a four-year time period."

¶ 14       In March 2025, the trial court conducted a hearing on all pending matters. While there is no transcript from the hearing, a bystander's report signed by both attorneys and the judge presiding is included in the record on appeal. See Ill. S. Ct. R. 323(c) (eff. July 1, 2017) (permitting a bystander's report if a transcript of the trial court proceedings is unavailable). According to the bystander's report, Ellen submitted various documents, including the parties' financial affidavits and paystubs. Nicholas's most recent paystub identified his monthly gross income of $39,954.92, monthly deductions for taxes of $9,487.22, and a monthly mandatory retirement contribution of $5,593.69. The bystander's report also indicated that Ellen submitted a

support obligation worksheet, proposing that Nicholas pay $4,800 in monthly child support.

¶ 15 The trial court thereafter entered its written decision granting Ellen's motions to modify maintenance and child support. In its order, the court set forth the terms of Nicholas's support modification and ordered him to pay maintenance to Ellen in the amount of $3,000 per month through April 2031. The court also calculated the parties' basic child support obligation of $5,086 based on their monthly combined net income, and it increased Nicholas's monthly payments to $4,108.

¶ 16 This appeal followed.

¶ 17 II. ANALYSIS

¶ 18 On appeal, Nicholas contends that the language in the MSA was sufficient to render his maintenance obligation to Ellen nonmodifiable. He also argues the trial court erred in determining his monthly net income for the purpose of calculating child support. In particular, he argues the court erred by using standardized, rather than individualized, deductions to calculate his child support obligation. We address these arguments in turn, but we first turn to the timeliness of our disposition in this matter.

¶ 19 Illinois Supreme Court Rule 311 (eff. July 1, 2018) requires accelerated dispositions in appeals involving child custody or allocation of parental responsibilities cases. Rule 311(a)(5) provides: "Except for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal or granting of leave to appeal pursuant to Rule 306(a)(5)." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). November 2, 2025, marked the end of the 150-day deadline following the filing of the notice of appeal in this case. However, Nicholas requested multiple extensions of time to file his opening brief, and the case was not docketed until November 13, 2025. Oral arguments were originally set on the court's

- 4 -

January 2026 oral argument calendar. Then, Ellen's counsel filed a motion to continue oral argument due to a family matter, which Nicholas did not oppose. This court granted counsel's motion to continue oral argument to the March 2026 term. Accordingly, we find good cause for issuing our disposition after the 150-day deadline.

¶ 20                              A. Modification of Maintenance

¶ 21              Generally, both the form and amount of maintenance to be awarded lie within the discretion of the trial court, and a maintenance award ordering a spouse to pay a fixed sum of money in installments for a fixed period is not subject to modification based on a change in circumstances. *In re Marriage of D'Attomo*, 2012 IL App (1st) 111670, ¶¶ 24-25; 750 ILCS 5/504(a), (b-4.5)(1) (West 2020). However, parties to a dissolution action are permitted by statute to enter into agreements regarding matters such as maintenance. 750 ILCS 5/502(a) (West 2020). When that happens, "[t]he terms of the agreement *** are binding upon the court unless it finds *** that the agreement is unconscionable." 750 ILCS 5/502(b) (West 2020). "A marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement." *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009). When interpreting a contract or marital settlement agreement, a court's primary objective is to give effect to the intent of the parties. *In re Marriage of Dundas*, 355 Ill. App. 3d 423, 426 (2005). The best indication of the parties' intent is the unambiguous language of the agreement, given its plain and ordinary meaning. *Dundas*, 355 Ill. App. 3d at 426. "If the parties do not provide that maintenance is non-modifiable in amount, duration, or both, then those terms are modifiable upon a substantial change of circumstances." 750 ILCS 5/502(f) (West 2020); *In re Marriage of Dynako*, 2021 IL 126835, ¶ 19. We review a trial court's construction of a marital settlement agreement *de novo*. *Dundas*, 355 Ill. App. 3d at 426.

¶ 22    Here, the parties agreed that Nicholas "shall pay to [Ellen] maintenance/spousal support in the amount of $30,000 in one lump sum (already paid) plus $3,000.00 per month for the following period: 4 years. Monthly maintenance may be paid off in a lump sum by [Nicholas] if he chooses." The parties' MSA was incorporated into the judgment. The trial court found the terms of the MSA to be appropriate and conscionable. And while Nicholas argues that the provision of the MSA that called for a termination "at the end of four years or via a second lump sum payment" barred the court's ability to modify maintenance, the case law simply does not support Nicholas's position. Rather, "the intent of the parties to preclude or limit modification *** of maintenance must be *clearly manifested* in their agreement." (Emphasis in original). *In re Marriage of Brent*, 263 Ill. App. 3d 916, 923 (1994). "[W]here the language utilized by the parties is not an *express preclusion* of modification, the court retains its authority to modify maintenance." (Emphasis added.) *Brent*, 263 Ill. App. 3d at 925. In such cases, "it is error to hold the maintenance nonmodifiable." *In re Marriage of Scott*, 205 Ill. App. 3d 561, 565 (1990).

¶ 23    The language of the MSA is ambiguous at best; it does not provide that maintenance is nonmodifiable in amount, duration, or both. In fact, the lack of such a provision differentiates the present case from those found to involve nonmodifiable maintenance awards and lends credence to the position the instant maintenance provision was modifiable. See *Dynako*, 2021 IL 126835, ¶ 20 (holding the settlement agreement's detailed maintenance schedule and express provision that maintenance payments shall be nonmodifiable "demonstrated the intent of the parties to make the obligation nonmodifiable"); *In re Marriage of Schweitzer*, 289 Ill. App. 3d 425, 429 (1997) (holding the settlement agreement unambiguously precluded modification because it expressly provided that it was not modifiable); *Brent*, 263 Ill.

App. 3d at 923 ("Had the [parties] expressly agreed maintenance could be terminated or modified *only* under the circumstances set forth in their agreement, the agreement would operate as a *limitation* on the court's ability to modify maintenance." (Emphases in original.)). Additionally, the MSA's clause regarding the "lump sum" option is similarly ambiguous and raises several questions. How is the lump sum calculated? Is it a yearly option or is it for the entire four-year period? Does payment of the lump sum terminate the obligation or merely prepay it while the maintenance period still runs? Does Ellen receive the lump sum all at once or is it paid to her in installments? So, even though Nicholas contends the "lump sum" language "clarifies that the maintenance was for a finite time period," it says nothing about its effect on the modifiability of the MSA, and it is far and away from a clear manifestation that the parties intended to limit or preclude modification. The fact that Nicholas bargained for maintenance does not affect the court's ability to modify the agreement.

¶ 24        In sum, the language used by the parties does not expressly bar any future modification, and nothing in the language of the MSA definitively establishes that maintenance was intended to be nonmodifiable. See *Brent*, 263 Ill. App. 3d at 925. Consequently, the trial court's conclusion that it could apply the statutory basis for an extension of maintenance was correct.

¶ 25                    B. Modification of Child Support

¶ 26        We now turn to the question of whether the trial court erred in determining Nicholas's net income for the purpose of calculating child support. On review, we consider whether the court's child support order "is an abuse of discretion or the factual predicate for the decision is against the manifest weight of the evidence." *Slagel v. Wessels*, 314 Ill. App. 3d 330, 332 (2000).

¶ 27        To place Nicholas's argument in context, it is helpful to set forth the relevant statutory provisions. Awards of child support are governed by section 505 of the Illinois Marriage and Dissolution Act (Act) (750 ILCS 5/505 (West 2024)). That section provides that the trial court may order either or both parents owing a duty of support to pay an amount that is "reasonable and necessary" for support. 750 ILCS 5/505(a) (West 2024). In calculating an award of child support, the court must first determine each party's gross and net incomes. Subject to exceptions not applicable here, section 505 defines "gross income" as "the total of all income from all sources." 750 ILCS 5/505(a)(3)(A) (West 2024). In turn, "net income" is defined in relevant part as "gross income minus either the standardized tax amount *** or the individualized tax amount." 750 ILCS 5/505(a)(3)(B) (West 2024).

¶ 28        The term "standardized tax amount" means "the total of federal and state income taxes for a single person claiming the standard tax deduction, one personal exemption, and the applicable number of dependency exemptions for the minor child or children of the parties, and Social Security and Medicare tax calculated at the Federal Insurance Contributions Act rate." 750 ILCS 5/505(3)(C) (West 2024). The term "individualized tax amount" is defined as the aggregate of "federal income tax (properly calculated withholding or estimated payments)," "[s]tate income tax (properly calculated withholding or estimated payments)," and "Social Security or self-employment tax, if applicable (or, if none, mandatory retirement contributions required by law or as a condition of employment) and Medicare tax calculated at the Federal Insurance Contributions Act rate." 750 ILCS 5/505(3)(D) (West 2024).

¶ 29        In calculating "net income," the trial court *must* use the "standardized tax amount *** unless the requirements for an individualized tax amount *** are met." 750 ILCS 5/505(3)(B) (West 2024). Section 505(3)(E) of the Act then provides that "a determination of an

individualized tax amount *may* be made" instead of a standardized tax amount under certain circumstances: (1) by agreement of the parties, (2) in a summary hearing where an eligible party opts in to the individualized tax amount method, or (3) if the court determines child support in an evidentiary hearing. (Emphasis added.) 750 ILCS 5/505 (a)(3)(E)(I)-(III) (West 2024).

¶ 30    Nicholas complains the trial court's alleged "misuse of the standardized tax amount in lieu of the individualized tax amount creates a higher net income for [him]." (Emphasis omitted.) The thrust of his argument comes primarily from the fact that he stopped contributing to Social Security when he changed jobs, and he now makes a mandatory teacher's retirement contribution. Nicholas argues this contribution should have been deducted from his gross income. However, section 505(B) of the Act provides the "standardized tax amount *shall* be used unless the requirements for an individualized tax amount *** are met." (Emphasis added.) 750 ILCS 5/505(a)(3)(B) (West 2024). Subparagraph (E) then uses the permissive "may" when describing situations in which the court can use an individualized tax amount formula. See 750 ILCS 5/505(a)(3)(E) (West 2024). "[T]he word 'shall' is commonly deemed mandatory [citation] and 'may' is generally deemed discretionary." *The Bigelow Group, Inc. v. Rickert*, 377 Ill. App. 3d 165, 170 (2007). Thus, a plain reading of the statute shows the court had discretion to use the individualized tax amount but was not mandated to do so.

¶ 31    Moreover, as the appellant, Nicholas has the burden of persuasion on appeal. See *Healy v. Bearco Management, Inc.*, 216 Ill. App. 3d 945, 958 (1991) ("The party prosecuting the appeal bears the burden of showing affirmatively the errors assigned on review."). Yet he neither references nor cites the actual figures relied upon by the trial court when it calculated the parties' net incomes. He also does not identify or cite any figures he submitted to the court for consideration, and it does not appear that Nicholas submitted a worksheet with his calculation of

child support. But given the parties' high combined net income, it is not clear if the statutory guidelines applied in this case beyond setting a floor for the amount the court could award. See 750 ILCS 5/505(a)(3.5) (West 2024) ("A [trial] court may use its discretion to determine child support if the combined adjusted net income of the parties exceeds the highest level of the schedule of basic child support obligation, except that the basic child support obligation shall not be less than the highest level of combined net income set forth in the schedule of basic child support obligation.").

¶ 32        For instance, after applying the statutory individualized tax amount formula to Nicholas's most recent paystub, and factoring in his $3,000 monthly maintenance payment, Nicholas's monthly net income comes to $21,874.01. Nicholas does not allege the trial court incorrectly calculated Ellen's monthly net income of $5,386. Under Nicholas's preferred calculations, the parties' combined monthly net income totals $27,260.01. The highest level of combined monthly net income set forth in the most recent schedule of basic child support obligation is $26,724.99, and it assigns a $5,086 monthly support obligation for parties with two children. See 2025 Addendum to the Illinois Schedule of Basic Obligations and Standardized Net Income Table, February 28, 2025. So regardless of the tax formula used, it makes no difference; the court awarded the *lowest* monthly support obligation possible. See *In re Marriage of Wilder*, 122 Ill. App. 3d 338, 344 (1983) ("[N]ot every error committed by the trial court in a civil case leads to reversal."). As such, and without evidence from the record indicating otherwise, we can find no merit to Nicholas's challenge to the court's child support award. See *Slagel*, 314 Ill. App. 3d at 332.

¶ 33                                III. CONCLUSION

¶ 34        For these reasons, we affirm the trial court's judgment.

¶ 35            Affirmed.